BUMGARDNER v. SOUTHERN RAILWAY CO.

(Filed April 28, 1903.)

1. INSTRUCTIONS—*Negligence—Personal Injuries—Trial.*

   In an action against a railroad company for personal injuries, it is error for the trial court to give an instruction which assumes that the freight train became separated and that a collision occurred, these being the facts in issue.

2. EVIDENCE—*Res Gestæ—Hearsay Evidence.*

   In an action against a railroad company for personal injuries, a statement of a person to the party injured, a very short time after the accident, relative to the condition of the train just prior to the accident, not being a part of the *res gestæ*, is not competent.

ACTION by C. B. Bumgardner against the Southern Railway Company, heard by Judge *Walter H. Neal* and a jury; at August Term, 1902, of the Superior Court of IREDELL County. From a judgment for the plaintiff, the defendant appealed.

*G. B. Nicholson,* for the plaintiff.
*L. C. Caldwell,* for the defendant.

MONTGOMERY, J.   This action was brought by the plaintiff to recover damages for personal injuries alleged to have been received by him through the negligence of the defendant. In his complaint the plaintiff alleges that while he was en-

gaged in his duties as brakeman on a very long freight train of the defendant the train became uncoupled, and upon the sections coming together again with great violence he was thrown to the ground and upon the track, and received dangerous and painful injuries. The allegations of negligence were a lack of sufficient number of employees to manage the train, and that the conductor of the train was not at his post of duty—in the caboose or cupola—where he was required to be by the rules of the company that he might keep a proper lookout; and because of such failure to furnish a sufficient force to man the train, and because of the failure of the conductor to be at his post to give proper signals of the separation of the train and of the subsequent collision, the plaintiff received his injury.

The questions then whether a separation of the cars took place and whether there was a subsequent collision of the sections were the material points in the case. Upon these matters his Honor gave at the request of the plaintiff the following instruction:

"If the jury find by the greater weight of the evidence that the conductor on the train was required under the rules of the company to be in the caboose, and that at the time of the plaintiff's injury he was without necessity on the second engine about 45 cars in front of the caboose, while the train was in motion, and you further find that if he had been in the caboose, according to rule No. 465 and on the lookout, that he could have given signals to the plaintiff and could have assisted the plaintiff in stopping the second section and prevented the collision and injury, and that this failure on his part was the proximate cause of the injury to the plaintiff, and that the defendant failed to use ordinary care, you are instructed to find the first issue (as to the injury of the plaintiff by the defendant's negligence) 'yes'." There is clear error in that instruction, for it included the

assumption that the train, had become separated and that a
collision afterwards occurred—the very matters which were
in contention between the parties.

Although there must be a new trial for the error pointed .
out, we think it better for all concerned to call attention to
another error upon a question of evidence because of its im-
portance and because it is almost certain that it will arise
again on the next trial:    The plaintiff as a witness for him-
self testified that when he fell from the car the wheels ran
over and crushed his left leg; that upon hitting the ground
he made an outcry for help, cried out very loudly, that he
took off his suspenders and was cording his leg to prevent
further bleeding when a Mr. Spurgeon (who was dead at
the time of the trial) came up to where he was lying, having
heard the outcries; that Spurgeon came up a minute and a
half or two minutes after the plaintiff was hurt.    At the
morning session of the court the witness said that when Spur-
geon came up the train had already pulled by, not more than
300 yards, that it was not out of sight.    When the court con-
vened after a recess, continuing his testimony he said that
when Spurgeon came up the train had gone but a short dis-
tance away, the rear end of the caboose being about 100 feet
or more; then he added "probably a little further than a hun-
dred feet."    Under those circumstances the plaintiff was
allowed over the objection of the defendant to testify that
when Spurgeon came up he said to the witness "that train
was parted when it passed me about two car lengths and I
thought it was going to hit."    We think the evidence should
not have been admitted.    It was not a part of the *res gestae*.
The law proscribes *hearsay* evidence; but there are certain
necessary exceptions to that general rule.    Amongst those
exceptions are certain declarations made at the time of the
main transaction—the principal fact under investigation—
if they are connected with the transaction and explain it as

to its character and purpose. Such declarations are often called *"verbal acts* indicating a present purpose and intention," and are admissible as original evidence like any other material facts. It is said in Greenleaf on Evidence, Sec. 108: "The principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." The same author in the same book, section 110, further says: "It is to be observed that where declarations offered in evidence are merely narrative of a past occurrence, they cannot be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as a mere result and consequence of the co-existing motives in order to form a proper criterion for directing the judgment, which is to be formed upon the whole conduct." There are decided cases in some of the courts, notably that of *Insurance Co. v. Mosely,* 75 U. S., 407, in which the original doctrine concerning this subject has been extended. In those cases, the question of time when the declarations are made is treated as of minor importance, if they are made at a time recent after the transaction, so recent as to preclude the idea of design. Immediateness as was said in *Ward v. White,* 86 Va., 212; 19 Am. St. Rep., 887, being tested by closeness, not of time, but by casual relation. In the case of *Insurance Company v. Mosely,* 75 U. S., 407, the court said: "It is impossible to tie down to time the rule as to declarations." There, the declarations of Mosely were made after his return to his bedroom from down stairs between 12 and 1 o'clock at night, and they were that "he had fallen down the back stair and almost killed himself." The plaintiffs counsel in his brief learnedly and ingeniously argued this case from the stand point of those referred to. But however inclined we may be to adopt those

views if the question was new, we think the numerous decisions of our court on the subject would prevent us.

Upon a careful reading of our own decisions, we are satisfied that the time at which declarations are made is most material, and that they are not admissible as evidence in our courts unless they are made during the happening of the main transaction or immediately and instantly after the transaction and in direct connection with it. They must be forced out, as it were, as the utterance of truth; they must be declarations as to something being done, and not as to what has been done.

In the case of the *State v. Dula,* 61 N. C., 211, Chief Justice Pearson for the court, discussing *res gestae,* said "Acts frequently consist not only of an action or a thing being done but of words showing the nature and quality of the thing. In such cases when the actions or thing being done is offered in evidence as a matter of course the words which form part of it must also be received in evidence; as if one seizes another by the arm saying 'I arrest you under a State's warrant,' these words are just as much a part of the act done as the action of taking him by the arm."

In *Harper v. Dail,* 92 N. C., 394, the court said, Judge Ashe delivering the opinion, "Declarations, to become part of *res gestae* must be made at the time of the act done and must be such as are caluculated to unfold the nature and quality of the facts they are intended to explain, and so to harmonize with them as to obviously constitute one transaction. In other words, they must be contemporaneous with the act and must be consistent with the obvious character of the act."

In *Simon v. Manning,* 99 N. C., 327, the court recites section 108 of Greenleaf on Evidence with approval.

In *State v. McCourry,* 128 N. C., 594, the prisoner was indicted for murder. Melvin Ray, one of the witnesses, said

at the time of the homicide, in answer to a question by a person who was present, "What that was?" referring to a "lick," "Elijah McCourry hit Bob Ray (the deceased) with a rock." This Court said the evidence was competent because it was spoken at the instant the fatal blow was given. The Court also quoted with approval from Underhill's Criminal Evidence, Sec. 1, the following: "The exclamations of persons who were present at a fracas in which a homicide occurred, showing the means and mode of killing are admissible for or against the accused because of their unpremeditated character and their connection with the event by which the attention of the speaker was engrossed."

In *Summerrow v. Baruch,* 128 N. C., 202, the court said, "The question, then, is were they (words spoken) a part of the *res gestae?* *Res gestae* is generally defined to be what is said or done contemporaneous with the fact sought to be established, or at least so nearly contemporaneous in point of time as to constitute a part of the fact to be proved, or to form a part of it or to explain it."

Under these decisions the declaration of Spurgeon introduced in evidence in the case before us was not admissible as a part of the *res gestae.*

They were clearly a narrative of a past occurrence, and they ought not to have been heard as evidence of that occurrence. To illustrate, if Spurgeon had been standing by at the time of the collision (if there was a collision) and had said just before the cars came together, "the cars are apart and there must be a collision"; or "there will be a collision and that man will be hurt"; or if he had said instantly upon the plaintiff falling to the ground and being hurt, "those cars were two lengths apart, I saw it and knew there would be a collision," in either of these instances the declaration would have been a part of the *res gestae.*

In *State v. Walker,* 78 Mo., 380, the moment after the fatal

BUMGARDNER *v.* RAILWAY CO.

shot was fired a bystander exclaimed, "Don't strike him for you have shot him now"; and the evidence was admitted as a part of the *res gestae.*

In *State v. Duncan,* 116 Mo., 288, it appeared that a bystander remarked immediately after the homicide to an officer, "There is the man who did it," and the evidence was held competent as a part of the *res gestae* on the trial of the person so designated, for murder. Those cases were cited with approval by this court in the case of the *State v. McCourry,* 128 N. C., 594.

New Trial.

DOUGLAS, J., *dubitante.*