STATE v. BUTLER.

(Filed 21 February, 1923.)

**1. Criminal Law—Excluding Evidence of Statement of Victim's Wife, Alleged as Made on Recognition of Husband's Knife, Held Not Error.**

In a prosecution for assault with a deadly weapon, where defendant claimed that, at the time he struck prosecuting witness with a pick-handle, he was acting in self-defense, witness having a knife in his hand and advancing on him, the State's evidence tended to show that witness had no knife, there was no error in refusing to admit evidence that at some time after the assault wife of witness, when handed a knife, exclaimed, "Lord, that is Herbert's knife" (witness's name being Herbert), where an appreciable time had elapsed after the assault before the remark was made, and it was not part of the *res gestæ*, nor did the evidence show clearly that witness heard the remark.

**2. Criminal Law—A Charge is to be Taken as a Whole.**

A charge is to be taken as a whole, and not broken up into disconnected and desultory fragments, and thus considered.

**3. Criminal Law—Charge to be Considered as a Whole.**

In a prosecution for assault with a deadly weapon, where defendant claimed he acted in self-defense, prosecuting witness having a knife in his hand and advancing on him, where the inference from the charges were that the jury should first inquire whether the assault was made in self-defense or whether unlawfully and wrongfully, and if they found that it was made in self-defense, to acquit, but, if not, they should further inquire as to whether defendant had committed an assault with intent to kill, an instruction that if they found that defendant assaulted witness with a deadly weapon, and that he did so without intent to kill, to return a verdict simply of guilty of an assault with a deadly weapon, and not of one with an intent to kill, was not intended to be segregated from the rest of the charge, and was not misleading.

Headnotes by MR. JUSTICE WALKER.

APPEAL by defendant from *Calvert, J.,* at July-August Term, 1922, of TRANSYLVANIA.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Welch Galloway for defendant.*

WALKER, J.  The defendant was tried and convicted óf an assault with a deadly weapon, and from the judgment upon such conviction appealed to this Court.  Application was made at the last term for a *certiorari,* the *certiorari* was issued, and the hearing of the appeal was set at the end of the call of the docket for the Second District at this term.

It seems that there was ample evidence to sustain the verdict of the jury to the effect that the defendant was guilty of an assault with a deadly weapon, of which he was convicted.  The defendant claimed that at the time he struck the prosecuting witness with a pick-handle, he was acting in self-defense, the prosecuting witness having in his hand a knife, and not only advancing on him with it, but that he struck him in such way as to cut his clothes.  The State's evidence tended to show that the prosecuting witness, Bumgardner, had no knife, and that the assault by the defendant was in consequence of a quarrel in which Bumgardner cursed him.

Defendant's first exception was taken to the refusal of the court to admit evidence that at some time after the assault the wife of Bumgardner, when handed a knife, exclaimed, "Lord, that is Herbert's knife." The prosecuting witness's name was Herbert Bumgardner.  It appears nowhere in the record that Bumgardner was being tried for any criminal offense himself.  It does appear, or rather there was some evidence, that Bumgardner was nearby at the time of this remark of his wife.  It also appears that an appreciable time had elapsed after the assault and before the remark was made, and, consequently, it was not part of the *res gestæ* as would be the involuntary or spontaneous exclamation of a bystander, at the very time of the transaction, within the principle of *S. v. Carraway,* 181 N. C., 561, and the cases there cited.  This principle was strikingly illustrated by the tumultuous cries of the mob, during the Lord George Gordon riots in London, while on the way to Parliament, which were admitted as evidence against the rioters to show their motive or object.  It is true that a witness may testify to a conversation between husband and wife, on a trial of the former for a criminal offense, tending to incriminate him or contradict him, if a witness, and occurring in the presence and hearing of the witness, and may contradict either of them as a witness in a cause by what one has said to the other, or, perhaps, by their conduct toward each other when relevant.  *S. v. Randall,* 170 N. C., 757; *S. v. McKinne,* 175 N. C., 784, and *S. v. Martin,* 182 N. C., at 850, but that is not precisely this case.  The situation and circumstances were not such, perhaps, as to prohibit the wife's remark from being used as evidence against her husband.  C. S., 1802. See *S. v. Mooney,* 64 N. C., 54; *Toole v. Toole,* 109 N. C., 615.  But the point here is that it did not reasonably appear that the husband either

heard what was said by his wife to another person, or, if he did, that he comprehended it, or was at all aware of its probable effect upon him. His attention was evidently distracted by the wound inflicted upon him by the prisoner.

It was said in the *Toole case, supra:* "The question which the court declined to allow the witness Pemberton to answer on the cross-examination, by implication sufficiently suggested the nature and purpose of the evidence it was intended to elicit. It was expected that this witness would state, in substance, that the plaintiff had forbidden his wife, before the time specified, to go or associate with the person named, or to go where he was. The evidence of other witnesses went to show that the plaintiff had reason to suspect that his wife and the person named were unduly intimate. We think that such evidence was relevant and competent. It tended, in some measure, to contradict the witness, Laura Toole. It is not probable that the plaintiff would have the man, whom he had reason to suspect was too intimate with his wife, to work for him; and that he invited that man to his house and to stay there with his children."

So that here the evidence of the witness Barton was competent for the purpose of contradicting the witness Bumgardner, as to his statement when on the stand, that he did not have a knife, provided his wife's statement was made in his presence, and in his hearing in such a way that he understood what was meant by what was said.

Underhill, in his treatise on Criminal Evidence, at pp. 153 and 154, sec. 122, says: "The silence of the accused as regards statements in his hearing which implicate him directly or indirectly may be proved with the statements, and from his acquiescence the jury may infer his guilt. Silence is assent as well as consent, and may, where a direct and specific accusation of crime is made, be regarded under some circumstances as a *quasi*-confession. . . . For silence to be equivalent to a confession, it must be shown that the accused heard and understood the specific charge against him, and that he heard it under circumstances not only permitting but calling for a denial, taking into consideration the circumstances and the persons who were present." And again at p. 298, sec. 242: "A witness may be impeached, not only by his contradictory or inconsistent statements, but also by proof that on a former occasion, under circumstances where it was his duty to state the whole truth, he omitted to state material and relevant facts which he now states. Thus, it may be proved that a witness omitted to state facts at the preliminary examination which he testifies to on the trial. But, for his silence to be admissible, it must appear from all the circumstances that it was his duty to tell the whole truth. The witness must be permitted to explain his previous ignorance of facts or his silence, and to show that his forget-

fulness or ignorance was real and not assumed." And still again, at p. 157, sec. 124: "A witness may testify that the declaration was made in the presence of the accused. He will not be permitted, however, to state his opinion that the accused must have heard it, for that is not for the witness to determine. The cases are not harmonious upon the mode of proving that the accused heard and understood the declaration, or whether the court or jury are to determine these facts. On the one hand it is affirmed that the facts that he heard and understood may be inferred by the jury from evidence that the statement was made in his physical presence, or from his nearness and attitude as a listener. On the other, it is held that this is not enough, and that affirmative evidence is required to show prima facie to the satisfaction of the court that the attention of the accused was attracted, and that he did actually and distinctly hear and understand, before the statement shall be permitted to go to the jury as his admission. If it appears indubitably that the accused was asleep, or was unconscious from intoxication or otherwise, so that he could not hear or understand, his silence is not competent."

This doctrine, which is substantially embodied in the maxim *Qui tacet consentire videtur,* was fully considered and discussed in *S. v. Jackson,* 150 N. C., 831, and the following, taken from the syllabus, is fairly to be drawn from the case:

"1. The silence of a party as an admission of statements made in his presence is to be received in evidence with great caution, and except under well recognized conditions, is altogether inadmissible.

"2. The silence of a person present at a judicial or *quasi*-judicial investigation, when statements are made by a witness, is no evidence of his admission of the truth of the statements, unless he was afforded fair opportunity to speak.

"3. Defendant had sworn out a warrant before a justice of the peace against S., and gave testimony upon the trial that S. had unlawfully stolen a ballot, pending a municipal election. Said S. was bound over to court, but no true bill found by the grand jury. Upon the trial of defendant for perjury, by reason of the oath and testimony, a State's witness was permitted to testify, over defendant's objection, that defendant was present, pending a hearing or investigation had before the county commissioners concerning this election, and said nothing at that time about S. having taken the ballot: *Held,* error."

This Court, in the *Jackson case, supra,* in the opinion of *Justice Hoke,* relies largely on Chamberlayne on Evidence, vol. 2, pp. 523 to 555, but also cites many decisions of this and other states, and among them *Francis v. Edwards,* 77 N. C., 271; *Tobacco Co. v. McElwee,* 96 N. C., 71; and, also, *Comrs. v. Brown,* 131 Mass., 69, where it is said: "A statement, made in the presence of a defendant, to which no reply is

made, is not admissible against him unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply, unless he intends to admit it; but if he makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence," citing *Comrs. v. Kennedy,* 12 Metcalf (Mass.), 235.

We must consider that in the present case it appears that Bumgardner, the State's witness, was at the time the remark was made by his wife badly wounded and suffering from its effects, and it does not appear that he actually heard the remark made by his wife, and the fair inference is that he did not. There was sufficient evidence before the judge for his exclusion of the question, upon the ground that the prisoner had not even made out a prima facie case for its admission as evidence, the burden being upon him to show its admissibility. Where a prima facie case is shown, and the evidence ruled in as an admission by silence, it would be competent for the prisoner, or other person affected by it, to show afterwards that the statement was not heard, or that it could not be heard, and if it was, or could have been, that owing to the condition of the person of whom it was spoken, or for some other reason, it was not understood, or could not have been, or that its significance was not apparent to him. This evidence being competent for that his silence under such circumstances would not be, or should not be, the equivalent of an admission, and the authorities above cited, and others, are to that effect.

But the difficulty we encounter in this case arises from the peculiarity, and even the uniqueness, of its facts and circumstances, as it bears no striking, or even close, resemblance to any other. The remark attributed by the witness Barton to Herbert Bumgardner's wife appears not to have been made under conditions and circumstances which indicated that Bumgardner himself heard it, or was even in a situation, with respect to her at the time, to hear it; and further, the evidence tends most strongly to show that he neither heard it, or, if he did, that he was not physically and mentally competent to understand it or realize its importance or relevancy to him, so as to call upon him to deny it or to speak at all. The testimony in regard to this phase of the case is of such an unreliable nature, or so incapable of either being called proof or considered as such, that we would not be justified in allowing it to be considered. It is more than likely, and indeed very probable, that it was not heard by her husband, but was uttered in a very low and inaudible tone of voice, although called an exclamation. The defendant should have offered some reliable or probative evidence that it was heard, or, at least, that it could have been, and there is no sufficient proof, we must hold, either

way.  *Lanergan v. The People,* 39 N. Y., 39.   We must therefore over-
rule this exception, as the evidence is not at all satisfactory as to the tone
of voice in which the remark was uttered.

The only other exception of the defendant was to that portion of the
court's charge, which is as follows:  "If you find from the evidence, and
beyond a reasonable doubt, that the defendant assaulted Bumgardner
with a deadly weapon, and that he did so without intent to kill, then you
should return a verdict of guilty of an assault with a' deadly weapon."

If this had been the only charge of the judge contained in the record,
it would (in the light of the fact that the defendant relied on self-
defense) have been erroneous.   It is, however, familiar law, constantly
administered by us, that a judge's charge in the court below is to be
taken as a whole, and not broken up into disconnected and desultory
fragments.   Judge Calvert in this case was particular in the first part
of his charge, to state the law of self-defense as applicable to the facts
of the case.   After doing this, he states first the contentions of the State
and then, in full, the contentions of the defendant, in which he sub-
mitted to the jury every point which might bear in his favor.   After
doing this, he warns the jury that it was for them to determine the case
upon the weight of the testimony, and as to whether or not they were
convinced beyond a reasonable doubt that the defendant unlawfully
assaulted the prosecuting witness with a deadly weapon.   Construed in
this way, it appears that the jury could not have been misled by the
charge.

It must be borne in mind that the extract from the charge given above
was not by any means all that the judge said, even in that immediate
connection, because in juxtaposition with the clause quoted from his
instructions to the jury, the learned. judge further said, after stating
the contentions of the respective parties and charging sufficiently upon
the law of self-defense as applicable to the special facts of the case, and
charged the jury as follows:  "So, having all the facts and circum-
stances in the case, if you find from the evidence and beyond a reason-
able doubt that the defendant assaulted Bumgardner with a deadly
weapon, and with intent to kill, then you should return a verdict of
guilty as charged in the bill of indictment; or if you find from the evi-
dence and beyond a reasonable doubt, that is, if you should find the
facts—I will go back and say that if you find from the evidence and be-
yond a reasonable doubt, that the defendant assaulted Bumgardner with
a deadly weapon, and with intent to kill, then you should return a verdict
of guilty as charged in the bill of indictment.  If you find from the evi-
dence, and beyond a reasonable doubt, that the defendant assaulted
Bumgardner with a deadly weapon, and that he did so without intent to
kill, then you should return a verdict of guilty only of an assault with
a deadly weapon."

We do not consider it possible that an intelligent jury could have understood from the entire charge that his Honor intended to segregate the quoted instruction, or any part of it, from what went before in his charge, but that the inference was clear that the jury should consider all of the instructions, and all of his charge, his intention being, and being clearly expressed, that the jury should first inquire whether the assault of the defendant was made in self-defense or whether unlawfully and wrongfully, that is, without excuse. If they found that it was made in self-defense, they should acquit the prisoner, but if it was not, they should proceed further to inquire whether the prisoner had committed an assault with a deadly weapon with intent to kill, and if so they would find him guilty accordingly, or if they found that he committed an assault with a deadly weapon without the intent to kill, they would find him guilty only of an assault with a deadly weapon.

We do not think that the court unduly emphasized the contention of the State, but that, on the contrary, he presented the case fully, fairly, and impartially to the jury, and that "he stated in a plain and correct manner the evidence given in the case and declared and explained the law arising thereon," as required to do by the statute.

We conclude that there is disclosed in the record no error, and, therefore, affirm the judgment.

No error.