I. J. YOUNG v. C. A. STEWART.

(Filed 3 March, 1926.)

**1. Evidence—Identity.**

In an action to recover possession of a diamond owned by the plaintiff and at the time in the defendant's possession, evidence as to how and when the plaintiff lost his diamond is immaterial.

**2. Evidence—Exclamations—Res Gestæ—Spontaneity.**

Spontaneous declarations uttered at or near the time of an occurrence, when pertinent to the inquiry, are *pars rei gestæ.*

**3. Appeal and Error—Evidence—Cross-Examination—Prejudicial and Unresponsive Answer—Motions—Objections and Exceptions.**

Where the answer to a question asked on cross-examination is not responsive, and is prejudicial to the party asking it, exception for an appeal must be made on refusal of a motion to strike it out.

**4. Evidence—Res Gestæ—Exclamations.**

Where the plaintiff has identified a diamond ring in defendant's possession, the subject of the action, there was evidence that the plaintiff and his wife were together when she suddenly exclaimed, "I have lost the set out of my ring": *Held,* not incompetent as hearsay for the husband to testify to this declaration on the trial as it was *pars rei gestæ.*

**5. Same—Hearsay.**

It is not absolutely required that exclamations must be made immediately at the time of the occurrence to be *pars rei gestæ,* though remoteness of time may be considered upon the question as to whether they were involuntary or narrative.

**6. Appeal and Error—Prejudice—Corroborative Evidence.**

*Held,* under the facts of this case, that plaintiff's wife told the plaintiff, her husband, that the band in which the diamond was set had been lost, was incompetent, but nonprejudicial, and the testimony of this witness that the diamond would fit the lost setting was competent as relating to the credibility of his other testimony.

**7. Appeal and Error—Prejudice.**

The erroneous admission of evidence upon the trial to be reversible error, must be shown to have been prejudicial to the appellant.

**8. Appeal and Error—Evidence—Harmless Error.**

Hearsay evidence may be rendered harmless by the same evidence given without objection by the appellant.

**9. Trials—Arguments—Agreement as to Time—Discretion of Court.**

Where at the suggestion of the trial judge the counsel for the parties have not agreed as to the length of the argument to the jury, they cannot complain that he has exercised his legal discretion in not extending it.

**10. New Trials—Newly Discovered Evidence—Supreme Court—Prejudice.**

A new trial will not ordinarily be granted by the Supreme Court upon newly discovered evidence that is cumulative or contradictory of some of the evidence on the trial, when it does not appear that it would have influenced the jury in rendering their verdict.

Appeal by defendant from *Sinclair, J.,* at October Term, 1925, of Vance. No error.

Action by plaintiff to recover of defendant a diamond. Plaintiff alleges that he is the owner of a diamond, which was lost from the setting on a ring, worn by his wife, while he and his wife were attending a meeting in a Chautauqua tent in the city of Henderson, N. C.; that this diamond was seen by plaintiff, some time after its loss, in the pos-

session of defendant; that plaintiff after inspecting the diamond with defendant's permission, informed defendant that the diamond in his possession was the same which plaintiff had lost; that defendant refused to deliver said diamond to plaintiff, although requested by him so to do.

Defendant denies that plaintiff has lost or owns a diamond; he admits that he has in his possession a diamond, and that plaintiff has seen and inspected the same; he alleges that he, and not the plaintiff, is the owner of this diamond.

The issue submitted to the jury was as follows:

"Is the diamond in question the property of I. J. Young?" The jury having answered this issue, "Yes," it was adjudged that "I. J. Young recover of C. A. Stewart the diamond in question, now in his possession and about which this controversy was had, at once, together with costs, to be taxed by the clerk." From this judgment defendant appealed to the Supreme Court.

*Perry & Kittrell, Kittrell & Kittrell and Zollicoffer & Zollicoffer for plaintiff.*

*T. T. Hicks & Son, Thos. M. Pittman and A. A. Bunn for defendant.*

CONNOR, J. Plaintiff, as a witness in his own behalf, testified: "Some months ago I saw a diamond in the possession of C. A. Stewart. I examined the diamond. It is mine. The diamond was originally my uncle's, and it came to me through his widow's will. It was first in a shirt stud, for shirt or tie. While screwing it in one morning I twisted it off. Then I had it set in a band ring. I wore it for some time. After I was married, my wife wore it. It was lost in the Chautauqua tent, and we could not find it. My wife was wearing the ring when the diamond was lost. The band was burst on both sides—just the stone was lost. The next time I saw the diamond was when Mr. Stewart had it. I communicated with Mr. Stewart. He very kindly brought it up. I looked at it, my wife looked at it, my brother and sister looked at it, I am positive it is the same stone.

"I allege in my complaint that the stone weighed 4½ karats. I know exactly what it weighs—between 3 and 4 karats. I identified the stone in the possession of C. A. Stewart as my diamond by its size, its cut, and by the particular flaw it has through the center. I think I can describe the flaw—it is what a jeweler would call a bubble; do not know whether I could describe it more definitely than that. I think there is another marking—a small scar on the side of it where it was scratched in resetting on one occasion. Mr. Mixon scratched it. I did not see him scratch it. The scratch was on it when it came from him. The scratch was not on it when it went to him.

"I wore the stone from 1893 or 1894 until 1900. I was thoroughly familiar with the stone. I state positively that the diamond in question is my stone. It was lost in June, 1923."

On cross-examination, plaintiff testified that· he was with his wife when she lost the diamond. The following questions and answers appear in the record:

"Q. How did you know she had lost it? A. Because she said, 'I have lost the set out of my ring.' Certainly I did not see my wife lose the diamond. If I had, I should have picked it up. It was lost at the Chautauqua tent. My wife was sitting directly behind me. I have not the band now. She has lost that.

"Q. How do you know it is lost? A. She told me so."

Defendant, in apt time, objected to the answer to each of the foregoing questions, and moved the court to have same stricken from the record, for that it appeared from said answers that witness was testifying from hearsay, and that this testimony was therefore incompetent. The objection was not sustained and the motion was denied. Defendant excepted.

Plaintiff on his cross-examination further testified: "The diamond I lost weighed 3 and 51-100 karats. Mahler in Raleigh has weighed it. I saw it weighed within the last two years—since this suit was started."

"Q. You saw the diamond you are suing for weighed? A. Mr. Mahler told me in his store that it weighed 3 and 51-100 karats."

Defendant objects to foregoing answer. Objection overruled. Defendant excepted. There was no motion to strike this answer from the record.

Witness further testified: "I have seen this diamond weighed in Mahler's store. I have seen the diamond my wife lost weighed in Mahler's store. The diamond I got under the will of my Aunt Pattie Young was weighed by a jeweler in my presence before it was lost. E. E. Hight is the person who weighed it. I do not know whether he is living or not. I saw him weigh it, and did know what it weighed."

Question by the court: "How did that correspond with the weight of Mahler?" Defendant objects. Objection overruled; defendant excepted.

A. "Very well. Mr. Hight told me that the diamond weighed between three and four karats. Mahler's weight was 3 and 51-100 karats."

Defendant objected; objection overruled; defendant excepted. There was no motion to strike this testimony from the record.

Defendant assigns as error the admission of the testimony of plaintiff, as evidence (1) that the diamond and the ring in which it was set were lost for that it appears that this testimony was based solely upon hearsay, to wit, statements made to witness by his wife, who did

not testify and was not sworn as a witness at the trial, and (2) that the diamond which was bequeathed to him by his Aunt Pattie weighed between 3 and 4 karats, and that the diamond which was in defendant's possession weighed 3 and 51-100 karats, for that it appears that this testimony was also based solely upon hearsay, to wit, statements made to witness by Mr. Hight and Mr. Mahler, neither of whom testified or was sworn as a witness at the trial.

There was competent evidence, to which there was no objection, that plaintiff was the owner of a diamond, which was bequeathed to him by his aunt, and which had formerly been owned by his uncle. Plaintiff's right to recover the diamond in the possession of defendant was not dependent upon a finding by the jury that this diamond had been lost; if the diamond which defendant admitted was in his possession and which plaintiff did not deny he had purchased from a third person, was the identical diamond which plaintiff owned, then plaintiff was entitled to recover, regardless of whether it had been lost or not. There was no contention by defendant that if the jury should find that plaintiff had ever owned the diamond in question, as he alleged, he had ceased to own it. The manner in which it had passed from his possession was immaterial, for it was not contended that he had parted with the title. The question chiefly involved in the issue, to be determined by the jury, was whether the diamond in defendant's possession was the same diamond which plaintiff owned, under the will of his Aunt Pattie Young.

The rule with respect to hearsay testimony as evidence, is stated by *Justice Hoke* in *S. v. Springs,* 184 N. C., 768, as follows: "With certain recognized exceptions, applicable chiefly in civil causes, and unless expressly made so by statute, hearsay evidence is not competent in the trial of issues determinative of substantial rights, a position particularly insistent where such issues involve the life or liberties of the litigant." *Smith v. Moore,* 149 N. C., 185; 1st Elliot on Evidence, secs. 315-319, Greenleaf (16 ed.), sec. 99a; Lockhart on Evidence, sec. 138. "Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it." 11 A. & E. (2 ed.) 520. This definition was approved by *Justice Brown* in *King v. Bynum,* 137 N. C., 492, and is cited with approval by *Justice Brogden* in the recent case of *S. v. Lassiter, ante,* 210. The grounds upon which hearsay testimony is excluded as evidence are stated and discussed in the opinion in each of these cases. *Justice Brown* says: "There are exceptions to this general rule excluding hearsay evidence laid down by the text-writers on evidence, such as admissions, confessions, dying declarations, declarations against interest, an-

cient documents, declarations concerning matters of public interest, matters of pedigree, and the *res gestæ.*" Hearsay testimony which does not come within any exception to the general rule of exclusion is incompetent, and should not be admitted; *Sloan Bros. v. Sawyer-Felder Co.,* 175 N. C., 657; if the answer to a question asked on cross-examination of the witness discloses that it is based upon hearsay and it is not within an exception to the general rule, it should, upon motion, made in apt time, be stricken from the record; *S. v. Green,* 187 N. C., 466; *Gilland v. Stone Co.,* 189 N. C., 786. If a question, addressed to a witness, on cross-examination, for the purpose of impeachment, elicits an answer, which is responsive to the question, but which is incompetent, such answer will not be held as reversible error, unless a motion to strike the same from the record is made in apt time, and overruled by the court, or unless if such motion is made and overruled, the answer is clearly prejudicial; *S. v. Green, supra.* An assignment of error will not be sustained unless same is based upon an exception to the refusal of a motion to strike out.

The testimony of the witness in this case that the diamond and the ring, with the bursted setting, were both lost was clearly based, in part, at least, upon statements made to the witness by his wife. The testimony was given by witness in answer to questions addressed to him on cross-examination. Defendant, in apt time, objected to the answers, and moved the court to strike same from the record. Defendant excepted to the refusal of these motions. These assignments of error, are therefore properly presented to this Court upon defendant's appeal from the judgment.

The exceptions were well taken, unless the testimony comes within a well-recognized exception to the general rule; otherwise, the assignments of error must be sustained, unless the error was clearly nonprejudicial.

A statement made as a part of the *res gestæ* may be given as evidence, although the person by whom the statement is made does not testify as a witness at the trial. "*Res gestæ* is generally defined," says *Furches, C. J.,* in *Summerrow v. Baruch,* 128 N. C., 202, "to be what is said or done contemporaneous with the fact sought to be established, or, at least, so nearly contemporaneous in point of time as to constitute a part of the fact to be proved, and to form a part of it, or to explain it." The statement must be instinctive rather than narrative or the result of deliberation. "In order for a declaration to be admissible as a part of the *res gestæ,* it must be the spontaneous utterance of the mind, while under the influence of the transaction, the test being, it has been said, whether the declaration was the facts talking through the party or the party talking about the facts." 22 C. J., 461, sec. 549, and cases cited;

*S. v. Spivey,* 151 N. C., 676; *S. v. Bethea,* 186 N. C., 23. It is said that "the modern tendency seems to be to treat spontaneity as a substitute for contemporaneousness, so that the act or declaration is not required to be exactly coincident in point of time with the main fact, but may even be separate from it by a considerable length of time, provided it is so immediately and closely connected with the main fact as to be practically inseparable therefrom, and serviceable to a clear understanding thereof, the element of time being of importance merely as bearing on the question of spontaneity." 22 C. J., 452. If a declaration is admissible as part of the *res gestæ,* it is competent, no matter by whom said. *Queen v. Ins. Co.,* 177 N. C., 34.

Applying these principles, it was competent for the witness to testify that while he and his wife were in the tent, at the Chautauqua, she, sitting directly behind him, said, "I have lost the set out of my ring." The witness testified that the last time he saw the diamond before he and his wife went to the Chautauqua, was when his wife was at supper on the night that they went to the Chautauqua; that she made the statement within fifteen minutes after she lost it; that the next time he saw the diamond it was in the possession of defendant. The testimony was competent as evidence that the diamond was lost from the setting on the ring that night and that Mrs. Young first discovered her loss when in the tent at the Chautauqua. It was a spontaneous statement made by the wife to her husband immediately upon her discovery of the loss. There was no error in refusing the motion to strike this testimony from the record.

Upon the same principles, however, we must hold that it was error for the court to refuse to allow the motion to strike out the testimony that his wife had told him that she had lost the band on which was the setting from which the ring was lost. This statement does not appear to have been spontaneous; it was narrative and not a part of the *res gestæ.* It was competent, however, for plaintiff to testify that he did not have the band at the time of the trial. This was a circumstance to be considered by the jury in determining the credibility of the witness' testimony as to the identity of the diamond. It was immaterial why he did not then have the band, if in fact he did not have it, and we cannot hold that the refusal of this motion is reversible error.

The fact that the witness did not offer his wife as a witness in his behalf was doubtless urged in the argument against his contentions; his failure, however, to produce her as a witness did not render his testimony as to her declaration that she had lost the diamond incompetent, for while it was hearsay, it was part of the *res gestæ.* His failure to produce the setting from which he contended that the diamond in

possession of defendant was lost, so that the jury might ascertain whether or not the diamond would fit in the setting, was a circumstance doubtless urged upon the jury in the argument as affecting his credibility; his failure to show why he did not produce the band at the trial, was not material, except as affecting his credibility.

Plaintiff testified on cross-examination that the diamond which he owned, and which he then had in his possession, was weighed by Mr. Hight, a jeweler, at Henderson, N. C.; that the diamond, of which he alleged he was the owner, and which was then in the possession of defendant, was weighed by Mr. Mahler, a jeweler at Raleigh, N. C.; that he was present when each jeweler weighed the diamond. He further testified that Mr. Hight, at the time, stated that the diamond weighed between 3 and 4 karats; that Mr. Mahler, stated that the weight of the diamond in defendant's possession, was 3 and 51-100 karats. In response to a question from the court, witness stated that the weight of the diamond weighed by Mr. Hight corresponded very well with the weight of the diamond weighed by Mr. Mahler. Defendant assigns as error the refusal of the court to sustain his objections to this testimony. The record discloses that defendant excepted to the refusal of the court to sustain these objections, but does not disclose that defendant moved that the answers to the questions on his cross-examination be stricken out. Conceding that the answers were based on hearsay, and that the statements of the jewelers are not part of the *res gestœ,* or within any exception to the general rule, excluding hearsay as evidence, the assignments of error cannot be sustained, for they are not based upon exceptions to the refusal of a motion to strike out the answers; *S. v. Green, supra.* Plaintiff had testified on his direct examination that he knew the weight of the diamond, which was lost by his wife in the Chautauqua tent. Defendant later testified that an employee of Mr. Mahler weighed the diamond in his possession, and said that it weighed 3 and 51-100 karats.

Other assignments of error based upon exceptions to the admission or exclusion of evidence cannot be sustained; to constitute reversible error, the evidence admitted must not only be incompetent, but it must be prejudicial and calculated to influence the minds of the jurors against the appellant; *King v. Bynum, supra.* Unless the testimony excluded clearly would have affected the jury in answering the issue, we cannot hold such exclusion to be reversible error. There is sufficient evidence in this record, unobjected to, and clearly competent, to support the verdict; both the testimony admitted as evidence, and that excluded, upon objection, influenced the minds of the jurors, or could have influenced them only in determining the credibility of plaintiff as a witness.

There was no error in the refusal of the court to limit the argument of counsel. There had been no agreement as to time for arguments to the jury. The suggestion of the judge made before the argument began, that counsel for both parties agree upon time for argument, was not accepted by counsel, and the matter was in the court's discretion. Nor does it appear clearly that the jurors did not hear the judge, while he was reading the statement of defendant's contentions, as requested by counsel for defendants, because the judge read the same in a low tone of voice. His Honor replied to the suggestion of counsel that the jurors were not hearing him for this reason, "I'm doing the best I can." Upon a renewal of the suggestion by counsel, at the conclusion of the charge, his Honor stated, "If any of the jury say that they did not hear them, somebody else may read it again, but I shall not read it again." No one of the jurors said that he had not heard the contentions as his Honor read them; it must be presumed that they did hear the contentions as read by his Honor.

The motion for a new trial first made in this Court on the ground of newly discovered evidence must be declined. This is an affidavit of Mr. Mahler of Raleigh to the effect that he had never personally weighed a diamond for plaintiff or defendant; that he had been informed by Mr. Snider, his employee, that he weighed a diamond for defendant, and that it weighed 3 and 51-100 karats. This is merely in contradiction of plaintiff's testimony and is not sufficient to support the motion; *Land Co. v. Bostic,* 168 N. C., 99.

Upon a careful consideration of the assignments of error relied upon by appellant, we conclude that there is

No error.