RIDIE WARD HARGETT v.
JEFFERSON STANDARD LIFE INSURANCE COMPANY.
AND
RIDIE WARD HARGETT v. THE PHOENIX MUTUAL
LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT.
AND
RIDIE WARD HARGETT v.
THE FIDELITY MUTUAL LIFE INSURANCE COMPANY.

(Filed 31 October 1962.)

1. **Evidence § 30—**

A declaration is competent as an exception to the hearsay rule when the declaration is relevant, is not a narrative of past occurrences but is so spontaneous in character as to safeguard its trustworthiness and preclude the likelihood of fabrication, and made contemporaneously with the occurrence or so closely connected therewith as to be practically inseparable therefrom, and whether a declaration is a part of the *res gestae* and competent is a preliminary question to be determined by the trial court upon the facts of each particular case.

2. **Same—**

The requirement that a declaration be contemporaneous with the occurrence in question in order to be competent as a part of the *res gestae* relates to the sponteniety of the utterance, and imports that the declaration be made under the influence of the occurrence and not be so remote as to permit declarant to reflect and fabricate his statement.

3. **Same—**

In this action on a double indemnity clause in a life policy, a declaration of insured that he had been stung by a wasp *held* competent as part of the *res gestae* upon evidence disclosing that insured voluntarily made the statement some two minutes after the occurrence as soon as he had walked the fifty to one hundred yards to where the witnesses were sitting in a car along the highway, and that at the time insured was suffering severe pain, the explanation being consonant with the other facts in evidence and there being nothing to indicate that declarant thought he was going to die or had insurance benefits in mind.

4. **Evidence § 44—**

It is competent for a medical expert to testify upon proper hypothetical question based on the facts in evidence as to decedent's prior good health, his conduct at the time of the occurrence, the condition of his finger, his suffering, his lapse into unconsciousness, and his death shortly thereafter, coupled with relevant physiological facts established by the expert, that in the witness' opinion death resulted from the sting of an insect.

5. **Insurance § 34—**

The evidence in this case tending to show that insured died as a result of the sting of an insect, *held* sufficient to be submitted to the jury in this action on a clause of a policy providing double indemnity if insured died as the result of bodily injuries effected solely through external, violent, and accidental means.

APPEAL by plaintiff from *Bone, J.,* May 1962 Term of JONES.

Three civil actions were consolidated for trial. Plaintiff seeks to recover double indemnity benefits under the provisions of certain life insurance policies by reason of the alleged accidental death of the insured.

Plaintiff is named beneficiary in the policies. Her husband, Guy Hargett, was the insured. The policies provide that the insurance companies will pay the beneficiary additional amounts equal to the face amounts of the policies if the death of the insured results from bodily injuries effected directly and independently of all other causes through external, violent and accidental means, where there is a visible contusion or wound on the exterior of the body.

Plaintiff alleges facts and circumstances sufficient, if established, to entitle her to the double indemnity benefits. Defendants deny that the death was accidental within the terms of the policy.

It was stipulated that insured died on 8 June 1953 at age 57, and the policies were in force at the time of death. Due proof of death was furnished. Demand was made and defendants refused payment.

Plaintiff's evidence is summarized as follows:

On the morning of 8 June 1953 Guy Hargett, the insured, talked for a few minutes with D. J. Baysden at the intersection of highways 41 and 258, Hargett's Cross Roads. Insured appeared to be in good health and did not complain of any illness or injury. They parted, and Hargett walked along highway 41 toward his home. When he had gone about 100 yards from the Cross Roads, he reached down, broke a bush and beat with it (witness illustrated) a time or two. He then turned and, interrupted only by a passing car, proceeded 50 to 100 yards diagonally across the highway to a point where George Turner was sitting in a vehicle in front of Whaley's Store. Hargett was wringing his hands. He stated to Turner and Jesse Jones, who was also present, that a wasp had stung him and he had never hurt so bad in all his life. (Upon objection by defendants, Hargett's statement to Turner and Jones that a wasp had stung him was excluded. Plaintiff excepted.) Hargett had a purple place under his finger nail. It was about two minutes from the time Hargett was beating with the bush until he made the statement to Turner and Jones. Immediately after making the statement Hargett walked directly to his home, a distance of about 350 yards. There it was observed that he had a discoloration at the end of his finger — "a pierce in what seemed to be the middle of a circle." Merthiolate was applied. He was in intense pain. Within a few minutes he became unconscious. He died about 40 minutes later without having regained consciousness. Dr. Mease had been called and arrived about 20 minutes before Hargett died. Hargett

was in good health prior to the occurrence and had never complained of any heart disorder. Dr. R. L. McMillan, a heart specialist and a member of the Staff of Bowman-Gray School of Medicine, was called as a witness by plaintiff. He had not attended deceased. He testified that he had studied, examined and treated the effects on humans of bites and stings by such insects as bees, hornets, wasps and yellow jackets. He discussed the systemic reactions, ranging from slight to extremely serious. He explained two serious reactions, stating that in some cases the stings resulted in a congestive heart failure or acute type of dropsy, and in other cases the brain and spinal cord were affected, and that in the latter class of cases one of the symptoms is loss of consciousness. He stated that a sting at the end of the finger is very painful because the tissue structure is such that the finger cannot swell. He testified that the external evidence of such sting "is frequently a puncture wound in the center of . . . a weal or welt, and there is commonly a purplish or reddish discoloration that comes on 20 to 30 minutes, or maybe sooner, after the sting." He testified without objection, in answer to a hypothetical question, that in his opinion insured died as a result of being stung by an insect.

At the close of plaintiff's evidence, the court, on motion of defendants, entered a judgment of involuntary nonsuit.

Plaintiff appeals.

*Jones, Reed & Griffin and George R. Hughes for plaintiff.*

*Wharton, Ivey & Wharton, Charles E. Dameron, III, and Whitaker & Jeffress for defendants.*

MOORE, J. We first consider whether the trial judge erred in excluding the statement of deceased to Turner and Jones that he had been stung by a wasp. An answer to this question is not necessary for a decision on this appeal, but the question will arise upon the retrial of the case and for that reason we discuss it here.

When, in an action upon an accident insurance policy, the beneficiary seeks to introduce in evidence declarations of deceased insured relative to the occurrence allegedly causing death, the inquiry is whether the declarations are part of the *res gestae* or are merely hearsay. 29A Am. Jur., Insurance, s. 1888, p. 947. To take such declaration out of the hearsay rule and render it competent as a part of the *res gestae,* it must be relevant, it must be so spontaneous in character as to safeguard its trustworthiness, preclude the likelihood of reflection and fabrication, and render it instinctive rather than narrative, and it must be contemporaneous with the transaction, or so closely connected with the main fact as to be practically inseparable

therefrom. *Little v. Brake Co.,* 255 N.C. 451, 455, 121 S.E. 2d 889; *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757. This general statement of the rule is difficult of application in particular circumstances. It has been said that "there is no single *res gestae* rule, and the expression does not mean exactly the same thing when used in different connections." Stansbury: North Carolina Evidence, s. 158, p. 329. Because of the incidence of various other rules of law in the different types of cases in which the *res gestae* rule arises, there seems to be inconsistencies in its application by our Court, particularly as to the effect of the time element. In many cases there is insistence upon strict contemporaneousness, and declarations made after the occurrence, however brief the interval of time, are excluded as "narrative." *Holmes v. Wharton,* 194 N.C. 470, 140 S.E. 93; *State v. Butler,* 185 N.C. 625, 115 S.E. 889; *Hill v. Insurance Co.,* 150 N.C. 1, 63 S.E. 124. Other cases emphasize spontaneity and admit utterances made after the occurence but before there has been opportunity to fabricate. *State v. Smith,* 225 N.C. 78, 33 S.E. 2d 472; *Young v. Stewart,* 191 N.C. 297, 131 S.E. 735; *State v. Spivey,* 151 N.C. 676, 65 S.E. 995. The effect of the time element in a particular case depends largely upon the particular circumstances involved.

The decision of the Supreme Court of the United States in *Travelers' Ins. Co. v. Mosley,* 8 Wall. 397, 19 L. ed. 437 (1869) established a more liberal trend in dealing with the time element in accident cases. There, the insured got out of bed about midnight, and shortly thereafter his son found him downstairs in a reclining position and asked him what was wrong, and insured said he had fallen downstairs and was badly hurt. He went back upstairs and told his wife he had fallen down the back stairs and almost killed himself, that he had hit the back of his head in falling. Insured died a few days later. The wife, beneficiary, sued for accident benefits of a life insurance policy. The Court ruled that the declarations of insured to his son and wife were admissible.

The opinion in the *Mosley* case exerted a powerful influence in expanding the concept of *res gestae* in accident cases and is now followed in a majority of jurisdictions. Some typical cases are: *Miser v. Iowa State Traveling Men's Asso.,* 273 N.W. 155 (Iowa 1937); *National Life & Accident Ins. Co. v. Hedges,* 27 S.W. 2d 422 (Ky. 1930); *Standard Acc. Ins. Co. v. Baker,* 291 P. 962 (Okla. 1930); *Bulkeley v. Brotherhood Acc. Co.,* 101 A. 92 (Conn. 1917); *Meyer v. Travelers' Ins. Co.,* 153 N.W. 523 (Minn. 1915); *Starr v. Aetna L. Ins. Co.,* 83 P. 113 (Wash. 1905); *Puls v. Grand Lodge, A.O.U.W.,* 102 N.W. 165 (N.D. 1904). The *Mosley* case was at first criticized in some quarters as being a bootstrap operation, that is, that the

court admitted in evidence a narrative to prove the accident itself, when the admissibility of the narrative was conditional upon the accident having happened. 163 A.L.R. 203. This criticism is not valid, for by this reasoning contemporaneous statements, otherwise competent, would in many instances be inadmissible. For example, consider the circumstances in *State v. Smith, supra,* and *Means v. R.R.,* 124 N.C. 574, 32 S.E. 960.

The generally accepted rule now is that "If the utterance tends to elucidate the occurrence, if it appears in its nature, manner and circumstances to have been so responsive to the mental impact of the accident as to be but an unconsidered reproduction of what the speaker has seen or experienced, and if it is made so soon after the accident as to render it improbable that perverting motive or false memory has intervened, it is admissible in evidence." 163 A.L.R. 92.

The admissibility of an utterance is, of course, a preliminary matter for the judge. If admitted, its weight and credit are for the jury. The ruling of the trial judge on admissibility is subject to review, but in doubtful cases should be given much weight. 163 A.L.R. 92, 93. See also *Swinson v. Nance,* 219 N.C. 772, 777, 15 S.E. 2d 284. The utterance should be regarded as presumably inadmissible. In determining whether the presumption has been overcome and whether the utterance is admissible the court should consider the time, place and content of the utterance, whether it was voluntarily made, motive for fabrication, condition of declarant, and corroborating circumstances. The time should not be so remote as to permit the declarant to reflect and fabricate and his statement to lose the quality of spontaneity. The utterance should be made under the influence of the accident. "What the law altogether distrusts is not after-speech but after-thought." *Travelers' Ins. Co. v. Sheppard,* 12 S.E. 18, 26 (Ga. 1890.) Ordinarily a response to a question is less trustworthy than a voluntary statement. A declaration made at the place of the occurrence is more likely to be influenced thereby than one made at a place substantially removed therefrom. Consideration should be given to those circumstances which motivate the utterance. It is important to consider whether declarant was under stress, emotion or pain brought on by the occurrence, or whether the declaration was made in a state of repose. An important consideration is whether the utterance is the narrative of an uncorroborated chain of events, or whether it is explanative of events otherwise in evidence. See 130 A.L.R. 302-310; *Meyer v. Travelers' Ins. Co., supra.*

Tested by the foregoing factors, it is our opinion that the statement of Hargett was competent and admissible. He made the declaration about two minutes following the occurrence, at or in close proximity

to the place the event occurred. It was made voluntarily and not in response to questioning. Declarant was suffering severe pain, and the statement was made under the stress and in explanation of the pain. There was no apparent motive to fabricate. There was nothing to indicate that Hargett thought he was going to die or considered that insurance benefits were involved. It was not a narrative of a chain of events, but was a voluntary statement of a single fact in explanation of a perfectly obvious set of circumstances capable of proof by other evidence. The declaration was such as would be accepted by others without question in the ordinary affairs and experiences of mankind.

Defendants contend, with some plausibility, that the doctrine of the *Mosley* case has been rejected by this Court. We have twice cited *Mosley* with approval in inapplicable cases. *Merrell v. Dudley,* 139 N.C. 57, 51 S.E. 777; *State v. Whitt,* 113 N.C. 716, 18 S.E. 715. In *Bumgardner v. Ry. Co.,* 132 N.C. 438, 441, 43 S.E. 948, the Court, discussing the opinion in the *Mosley* case, said: "But however inclined we may be to adopt these views if the question was new, we think the numerous decisions of our Court on the subject would prevent us." This was pure dictum. The declaration by the by-stander in the *Bumgardner* case, made after the occurrence, would not have been competent in any event. It was a narrative of events antecedent to the main occurrence and was in part a statement of opinion.

Defendants insist that *Hill v. Insurance Co., supra,* is indistinguishable from the instant case. Accident insurance was involved. Witness, just as a passenger train passed, saw deceased struggling and falling along beside the train, "ran there as quickly as he could, rolled the man over on his face and commenced to talk to him." The injured man stated the circumstances leading up to and causing his injury. The Court refused to permit the witness, who had been called by defendant, to relate deceased's statement, and held that it "was not exclamatory but narrative, and therefore hearsay and incompetent." The facts are similar to those in the *Mosley* case, but there are important differences. Mosley's statement related the main fact, the injury and its immediate cause as an explanation of his suffering; in *Hill* the immediate cause of the injury was obvious to the witness without any explanation, deceased's statement narrated his antecedent conduct and the events leading up to the main fact. The instant case is also significantly different. Hargett's statement related only to the main fact which explained his suffering, not to antecedent matters. It is not a narrative of a chain of events; it was explanatory of events already known and undisputed. Furthermore, the statement was voluntary and instinctive and not in response to questioning. We do not overrule the *Hill* case. In this jurisdiction cases are to be decided according to the circumstances involved.

Defendants concede that, if Hargett's death was caused by insect bite or sting, his death resulted from bodily injuries through external, violent and accidental means, and accident benefits are payable to beneficiary.

Even if insured's statement to Turner and Jones is excluded, there is competent evidence that death was caused by insect sting. In answer to a hypothetical question Dr. McMillan stated: "My opinion is that death resulted from an insect sting."

But defendants maintain that the answer of Dr. McMillan is insufficient and violates the rule (20 Am. Jur., Evidence, s. 787, p. 661) that "An opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support that conclusion." Defendants contend that the doctor's opinion supplies the immediate cause of the injury which is a fact necessary to support his conclusion. We do not agree that the rule was violated. The facts in evidence, including defendant's prior good health, his conduct at the time of the occurrence, the condition of his finger, his suffering, the lapse into unconsciousness, and his death shortly thereafter, coupled with the professionally established facts testified to by the doctor expert, were sufficient predicate for the conclusion reached by the witness. The hypothetical question was in proper form, included only such facts as were in evidence, and the facts were a sufficient hypothesis for the answer given. Stansbury: North Carolina Evidence, s. 137, pp. 270, 271; *State v. Smoak*, 213 N.C. 79, 195 S.E. 72; *Bailey v. Winston*, 157 N.C. 252,: 72 S.E. 966.

The court erred in allowing the motion for nonsuit.

The judgment below is

Reversed.