## ARDOIN v. ROBINSON et al.

### No. 1723.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1937.

S. W. Plauche and J. J. Tritico, both of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

OTT, Judge.

The suit is for damages which plaintiff claims to have sustained on May 19, 1936, in a rear-end automobile collision on the Old Spanish Trail between Lake Charles and Welsh. In her original petition, plaintiff claims damages in the sum of $11,500, but in a supplemental and amended petition she increases her claim to $19,500, and enlarges and makes more specific the allegations in her original petition. No objection was made to the filing of this supplemental petition, and, as it seems to set out the basis of her claim, we will make a brief summary of the allegations in this supplemental petition.

She alleges that she was riding in a Chevrolet automobile as a guest of her son, Lionel Ardoin, going eastward toward Welsh for the purpose of visiting her sister who lived in Welsh; that she was sitting on the front seat on the right side; that there was another car parked on the south side of the highway, partly on the pavement and partly on the shoulder of the road; that when the automobile in which she was riding, driven by her said son, reached a point about 120 feet west of the parked car, headed in the same direction as the car in which she was riding, and while her son was driving 20 to 25 miles per hour, her son began turning to the left for the purpose of passing the parked car, after having blown his horn and after having looked through his rear mirror and seen approaching from the rear another car more than 400 feet behind; that her son proceeded along the north or left lane of traffic at the rate of 20 to 25 miles per hour in passing the parked car, and, when the car in which she was riding with her son had just passed the parked car, her car was suddenly and violently struck from the rear by the car coming from the rear; that the impact was so great that it pushed the car in which she was riding about 60 feet east of the point of collision, throwing her violently against the back of the seat, then forward and sideways with such violence as to cause a fracture of her spinal column and other severe injuries and bruises to her back and right arm.

She further alleges that the automobile which ran into the car in which she was riding was owned by the Pelican Well Tool & Supply Company, and was being driven and operated by Geo. A. Robinson, an employee of said company, and while acting within the scope of his employment. She charges Robinson with negligence in the following particulars: In driving at an excessive rate of speed, more than 60 miles per hour; in failing to bring his car to a stop or slacken his speed so as to avoid hitting the car in which she was riding; in failing to keep a proper lookout and in failing to see the parked car and bring his car under proper control in passing the parked car; in failing to blow his horn or to give other proper warnings of his approach along the north lane of traffic; in leaving the south lane of traffic and going into the north lane of traffic in the rear of the car in which plaintiff was riding, and in proceeding along this north lane of traffic at an excessive rate of speed, without stopping or decreasing his speed, when he saw, or should have seen, that the north traffic lane was occupied by the automobile in which plaintiff was riding and which was passing the parked automobile which occupied part of the south traffic lane.

The suit is against Robinson, his said employer, and the American Mutual Liability Insurance Company, the insurance carrier on the car driven by Robinson. All three defendants filed a joint answer. They admit the collision and admit that Robinson was driving the car in pursuance of his duties in connection with his employment by the Pelican Well Tool & Supply Company, and also admit that the Robinson car was insured by the above-named insurance company within the terms of the policy issued by it. They deny that the collision was caus-

ed by the negligence of Robinson. They allege that Robinson observed the Ardoin car several hundred yards before reaching same; that this Ardoin car completely obstructed Robinson's view of the parked car as he proceeded behind the Ardoin car; that when Robinson was within 100 feet of the Ardoin car he had reduced his speed to about 30 miles per hour, continued reducing his speed, sounded his horn, turned toward the north or left lane of traffic to pass the Ardoin car, and, when within a few feet of the latter car, the driver, without warning or signal, suddenly crossed over to the left lane of traffic directly in the path of Robinson's car; that, as the Ardoin car turned into the left lane of traffic, Robinson saw for the first time the parked car just a short distance ahead, and that he was then faced with an emergency created by the unlawfully parked car and the Ardoin car ahead of him, and in the emergency he applied his brakes and made every effort to avoid the collision. Defendants attribute the collision to the negligence of the driver of the Ardoin car in turning into the left lane of traffic when Robinson's car was only a few feet behind and without observing oncoming traffic and without giving any signals; in failing to observe the warning given by Robinson in blowing his horn, and in failing to bring his car to a stop in the rear of the parked car before attempting to pass it on the left side.

The trial judge reached the conclusion that the collision was caused by the negligence of Robinson, and rendered judgment against all three defendants for the sum of $60 and cost, which covered the arm injury to plaintiff and the doctor bill for treating her arm. The claim for the injury to plaintiff's back, which was her principal claim, was rejected on the ground that the trial judge did not believe plaintiff had sufficiently proved an injury to her back to justify an award for that alleged injury. The plaintiff has appealed, and defendants have answered the appeal and have asked that the judgment be amended by rejecting the claim of plaintiff in toto.

A careful review of the evidence on the question of liability vel non of the defendants leads us to the conclusion that the trial judge was correct in his finding of fact that the negligence of Robinson was the proximate cause of the accident. We are also in accord with the trial judge in his estimation of the damage resulting to plaintiff from her arm injury. In fact there

seems to be no dispute on this item of damage. The serious bone of contention, and the question presenting the greatest difficulty, is the alleged injury sustained by plaintiff to her back.

The preponderance of the evidence shows that there was a car parked on the highway, headed east, on the south side, partly on the shoulder of the road; that, when the driver of the Ardoin car got within 100 to 125 feet of this parked car, he began to turn to the left in order to pass the parked car; that the Ardoin car was traveling at a moderate rate of speed, from 20 to 25 miles per hour; that the road at this point is straight and the pavement 18 feet wide, with guardrails admitted to be three feet from the pavement on each side (but the judge, who visited the scene, says that these guardrails are only about 18 inches from the concrete on either side of the road). Before turning into the left lane of traffic, Ardoin saw the Robinson car in the rear about 300 feet away, and, when the Ardoin car had just passed the parked car some 2 feet, it was struck in the rear by the Robinson car with sufficient force to bend the back frame of the Ardoin car, to bend the bumper, right fender, tire carrier, gasoline tank, as well as breaking a glass in the back window. The Ardoin car was pushed, or rolled of its own momentum, some 75 feet forward after the impact.

We concur in the statement made by the trial judge in his opinion that the negligence of Robinson is shown by his own answer and in the light of his testimony. He states in his answer that when he reached a point within 100 feet west of the Ardoin car, he had reduced his speed to about 30 miles per hour. He testifies in one place that when he first saw the Ardoin car he was about 400 yards from it, and that this Ardoin car ahead of him appeared to be going slowly; that he began slowing down when he saw this car ahead of him, and that the Ardoin car ahead of him completely obstructed his view of the parked car, and he did not see the parked car until just before the accident, or until the Ardoin car pulled over to the left of the road; that he pulled over into the left traffic lane 200 to 300 feet from the Ardoin car and was traveling in that lane at about 35 to 45 miles per hour when Ardoin began to pull over into the left lane about 30 to 40 feet ahead of him, and further testified as follows:

"Q. In other words, let's get this straight. You say when Ardoin started cutting to

the left, you were about 30 or 40 feet from the Ardoin car? A. Yes.

"Q. And that after Ardoin had cut to the left and had gotten completely over to the north lane of traffic, you saw the parked car and you were 30 or 40 feet from the parked car? A. Yes."

In our opinion this testimony itself shows the negligence of Robinson in at least two respects: First, in his failure to see and heed the parked car on the side of the road. The road was straight and level; he traveled several hundred yards behind the Ardoin car, some of the distance on the right-hand side, and some 200 to 300 feet on the left-hand side. It is hardly conceivable that he could see no part of the car parked on the right side of the road, at least part of it extending over the pavement, had he been keeping a proper lookout. In the second place, if, as he says in his answer, he had reduced his speed to 30 miles per hour when within 100 feet of the Ardoin car, there is no reason whatever for his failure to stop his car within the 70 or 80 feet at least from the point where he states the Ardoin car began to pull over and the point of the impact slightly in front of the parked car. We do not find that the driver of the Ardoin car was guilty of any negligence in attempting to pass the parked car.

The driver of an automobile on the public highways must keep his car a safe distance behind vehicles ahead, traveling in the same direction, and must have his car under proper control so as to avoid striking the car ahead so long as the car ahead is observing the rules of the road. The driver of the front car owes no duty to the car in the rear, except to use the road in the usual way, and, until made aware of it by proper signal, he has a right to assume either that there is no other car approaching him from the rear, or else, if there is such approaching car, it is under such control as not to interfere with the use of the road in his front or to his side in a lawful manner. Rules 7 and 8, § 3, of Act No. 21 of 1932; 5 American Jurisprudence, p. 656, § 280.

We now come to the most difficult part of the case, the question of whether or not plaintiff sustained an injury to her back. She alleges that she suffered a fracture of her spinal column and other severe injuries and contusions to her back. In addition to the lay witnesses, twelve doctors and medical experts testified in the case.

On June 2, 1936, Dr. S. F. Hatchette, a roentgenologist, took an X-ray picture of plaintiff's back. This was two weeks after the accident. Dr. Hatchette, in reading this radiograph, found what he calls a compression fracture of a mild degree of the ninth thoracic vertebra. Only two other doctors who examined this picture would confirm Dr. Hatchette's interpretation of the picture that it showed a fracture of the ninth dorsal vertebra. Several other doctors who examined this X-ray stated that they could see no fracture shown in the picture, and two roentgenologists, both famous in their line, stated that what appeared to be a fracture shown in the picture was what is known as an artifact, or fault in producing or making up the picture. In view of this conflict in the opinions of the experts, we do not think plaintiff has shown a fracture of the ninth dorsal vertebra, nor do we understand that she is now seriously pressing the point on this phase of her injury.

On October 20, 1936, Dr. S. R. Henry, another X-ray specialist, took a picture of plaintiff's spinal column. In his interpretation of this picture Dr. Henry found a fracture of the ankylosis—bony structure—between the eleventh and twelfth dorsal vertebrae. The majority of the experts who examined this X-ray disagreed with the opinion of Dr. Henry and one or two others that the pictures showed a fracture of the bony structure between the eleventh and twelfth dorsal vertebrae, the preponderance of the medical testimony showing that what appeared to be a fracture in this picture was only a lipping or failure to meet in the growth of calcium deposits on the ligaments or spurs of these two vertebrae.

Dr. C. M. White, of Beaumont, Tex., a radiologist, made an X-ray of plaintiff's spinal column on October 22, 1936. He found what he thought was a fracture of the ankylosis between the eleventh and twelfth dorsal vertebrae as did Dr. Henry. But, without going into the details of the expert testimony, we believe that the weight of the testimony fails to show this fracture in the pictures made by Drs. Henry and White.

The defendants had X-rays made of plaintiff's back on June 15, 1936, by Dr. McKinney, also a radiologist. These pictures were made from different views and positions and of several parts of the spinal column. None of these radiographs show any fractures, according to the opinion of several doctors who examined them. Out

of this maze of expert testimony, conflicting as it is, we cannot say that the trial judge was in error in holding that the evidence failed to show a fracture of plaintiff's spinal column.

The situation in which we find the expert testimony, conflicting and unconvincing, leads us to resort to the lay testimony and consider it in the light of the medical testimony.

As already stated, the impact against the car in which plaintiff was riding was rather severe, throwing her backwards, forwards, and sideways against the solid parts of the car. She received a severe bruise or contusion on her right arm and an abrasion on her back. This violent shock was sufficient to give plaintiff a severe jar and jolt, and, in a person of her age—62 years—could easily have injured her back.

She immediately complained of pain in her back, and continued to do so from the moment of the accident. She had never complained of pain in her back before the accident, although she had suffered from high blood pressure and spondilitis—inflammation of the joints of the spine. Therefore we must conclude that she is either faking a back injury and has fooled several people, including some reputable doctors, or else we must find that she actually received an injury to her back, even though it may not be to the same extent as she has endeavored to show by the testimony.

We are much impressed with the truth of the statement made by two of the doctors to the effect that because an X-ray may not show a fracture is not an absolute assurance that none exists for the reason that so much depends on the position of the patient and her attitude when the picture is made. This fact may account for much of the difference in the various radiographs made in this case, and the conflict of opinion in their interpretation.

Plaintiff was suffering from spondilitis—which is arthritis of the back—before the injury. A decided majority of the doctors state that spondilitis would likely be reactivated or aggravated by such a jolt and shock as plaintiff sustained. As one doctor describes it, the spondilitis would likely be lighted up by such a shock.

The fact that plaintiff has suffered pain in her back since the accident where none existed before, coupled with the fact that the preponderance of the medical evidence shows that a shock of the nature sustained by plaintiff would probably aggravate and reactivate the spondilitis condition, justifies the conclusion that plaintiff has suffered a back injury.

It is true that two of the doctors state that the X-rays examined by them show no reactivation or aggravation of the spondilitis condition. But they do not show how they can be sure of this opinion from the examination of X-rays made only three or four months apart. In any event there is too much evidence by lay witnesses to the effect that plaintiff did suffer pain in her back after the accident for us to ignore it and conclude that she is faking an injury when none exists.

Learned counsel for defendants argue that proof of injury to the back other than a fracture is not relevant under the pleadings. This argument is without merit for two reasons. First, she alleges in her petition, in addition to the fracture of her spinal column, other injuries and contusions to her back. Under this allegation she is entitled to prove other injuries to her back besides a fracture. Second, evidence of other injuries was introduced without objection on the part of defendants, and, if the pleadings were not large enough to admit this proof, they have been made so by the introduction of this evidence without objection.

In addition to suffering pain since the accident, plaintiff has been unable to do the housework which she did before. She has not been confined to her bed all the time, but has been up and down, and has been under the treatment of a doctor since two days after the accident. She has incurred a doctor bill with Dr. Sorrells for $250 and Dr. Hatchette for $15. She is entitled to recover these items. We think she is entitled to recover a substantial amount for mental and physical pain and suffering. We have decided to fix this item at $1,000. We do not think the evidence justifies an award on any of the other items of damage claimed, such as loss of life expectancy, deformity of her back, probability of development of Kummel's disease, and loss of time.

For the reasons assigned, the judgment appealed from is hereby amended by increasing the amount of damages awarded plaintiff from $60 to $1,325, and as thus amended the judgment is affirmed at the cost of defendants in both courts.

LE BLANC, J., dissenting and being of the opinion that the judgment should be affirmed as rendered.