WOLFE v. TOYE BROS. AUTO &
TAXICAB CO., INC., ET AL.

---

(December 14, 1931. Opinion and Decree.)

---

George Piazza, of New Orleans, attorney for plaintiff, appellant.

John P. Sullivan and David Sessler, of New Orleans, attorneys for Toye Bros. Auto & Taxicab Co., Inc., defendant, appellee.

John May, of New Orleans, attorney for Mrs. Hardie, defendant, appellant.

JANVIER, J. Plaintiff Wolfe was a passenger in a taxicab of defendant Toye Bros. Auto & Taxicab Co., Inc., when, on the morning of October 20, 1929, that taxicab and a Buick coupe, owned by defendant Mrs. Hardie and driven by her major son, collided at the corner of Melpomene and Prytania streets in New Orleans.

The taxicab was on its way out Melpomene street towards the river, and the Buick was proceeding down Prytania street

on the right side of the center of the roadway.

Plaintiff Wolfe charges that both drivers were negligent. He maintains that the chauffeur of the taxicab was at fault in that he attempted to cross Prytania street at high speed, without warning, without stopping and without according to the Buick the right of way to which it was entitled under the traffic ordinance of the city of New Orleans, by reason of the fact that it (the Buick) was approaching an intersection on a street on which were located street car tracks and on account of the further fact that it was approaching from the right-hand side of the driver of the taxicab.

Plaintiff asserts that Mr. Hardie, the driver of the Buick, was negligent in that he operated his car at a speed in excess of that permitted by the traffic ordinance to which we have referred and, in effect, plaintiff further charges that in spite of the negligence of the driver of the taxicab Mr. Hardie could have avoided the accident had he been paying attention and had he been driving at a reasonable, lawful speed.

The ordinance in question is No. 7490, C. C. S., and the particular portions thereof which are pertinent are the following:

Article 1, section 7. "RIGHT OF WAY. (a) Vehicles traveling on the following streets have the right of way over vehicles approaching on intersecting streets, namely; (certain streets specially designated by name.)

"All boulevards, all streets with street car tracks * * * (other paragraph not pertinent to the issues here involved.)

"Vehicles approaching from the right shall have the right of way * * *."

Article 2, section 1, paragraph (b). "TWENTY MILE ZONE. All streets and avenues within the City of New Orleans not otherwise restricted * * *."

Wolfe itemizes his damages and financial losses as follows:

Fee paid to trained nurses from October 20, 1929, to November 10, 1929__$ 174
Medicines _____ 25
Doctor bills _____ 176
Injury to nervous system_____ 2000
Injury to left eye_____ 2000
Physical pain and mental anguish_____ 2000

Total _____$6375

The district judge rendered judgment for plaintiff and against Mrs. Hardie for $150, but rejected the demand against the other defendant, Toye Bros. Auto & Taxicab Co., Inc., and from that judgment both Mrs. Hardie and Wolfe have appealed.

Mrs. Hardie, prior to answering on the merits, had filed an exception of no cause of action based on the alleged absence of charges of negligence against her and, in support of the said exception, her counsel argues that plaintiff's petition throws the entire blame for the accident on the driver of the taxicab and thus fails to show any negligence on the part of the driver of Mrs. Hardie's Buick and that the petition fails to allege and the evidence fails to show any facts which would render Mrs. Hardie legally responsible for the negligent acts of her major son.

The petition does allege that the Buick, owned by Mrs. Hardie and in which she was a passenger and which was driven by her son, "was proceeding at a rate of speed in excess of 25 miles per hour, in violation of the aforementioned traffic ordinance; that the driver of said automobile failed to keep it under absolute control upon approaching and reaching an intersection so that it could be stopped at once in case of emergency." Here we find an allegation that the traffic ordinance had been violated and we find an allegation that, immediately after the violation

or, in fact, during the continuance of the violation, the collision occurred. We feel, as did His Honor below, that such an allegation was sufficient to put that defendant on her guard. We believe as did the district judge that, although the allegations as to the negligence of the driver of the Buick may be somewhat vague, nevertheless, they are sufficient to permit of the introduction of evidence in support thereof.

There is no doubt that a parent merely by reason of the relationship is not responsible for negligent acts of his or her major children, but here we find from the evidence that the automobile in question belonged to Mrs. Hardie, that she was riding therein, and that, according to her statement, it is probable that she had asked her son to drive her to the railroad station to meet her parents. It is quite true that on various prior occasions the son, on his own initiative, had driven to the station to meet defendant's parents, his grandparents, and it is equally true that had an accident occurred on those occasions in all probability there would have been no liability in Mrs. Hardie, but here it appears that the son, though a major, acting on the request of his mother, was driving her in her car and we feel that, thus, on this particular occasion, he was acting as the agent of his mother and that she should be responsible for the results of his negligent deeds while so acting.

We find from the testimony of Mr. Hardie, himself, that he was driving at about 25 miles an hour. This, in itself, was a violation of the traffic ordinance which in that locality limited speed to 20 miles an hour, and constituted negligence per se, but, of course, would not render liability absolute unless it appears from the record that that negligence had causal connection with the ultimate result. However, according to the testimony of Mrs. Hardie he must not have been keeping a careful lookout ahead because he did not see the taxicab coming out of the side street, and, in fact, was not aware of its presence until, as he puts it, "I was practically on top of it." Had his speed been within the limit permitted by the ordinance and had he been keeping a proper lookout it could hardly be said that he could have failed in an effort to avoid the collision.

As to the taxicab, the evidence fails to show any negligence chargeable to the driver. The only statement in the entire record to the effect that the taxicab did not stop or slow down before entering the intersection is given by Wolfe, the plaintiff, but his testimony in this regard is made of little value by a written statement signed by him on the morning after the accident in which he said "when the cab arrived at a carline intersection (perhaps Coliseum) the cab slowed down, blew his horn and then proceeded across." There is, then, in the record no trustworthy evidence that the taxicab driver was careless in negotiating the crossing and the proof is abundant to the effect that the cab had entered the intersection first and that it was almost across when it was struck by the Buick.

Since the driver of the taxicab was not at fault and since the driver of the Buick was at fault and since Mrs. Hardie is legally liable under the circumstances for the negligence of the driver of her automobile, it follows that the judgment appealed from insofar as it fixes liability solely upon Mrs. Hardie is correct.

It, therefore, behooves us to consider the evidence with reference to the extent of the injury and losses sustained by plaintiff.

Our attention is at once attracted by the discrepancy between the amount claimed by plaintiff, $6,375, and the sum fixed by the trial judge, $150, as being adequate to recompense plaintiff for his losses, but we find from the reasons given by our brother below that he did not believe the witnesses for plaintiff who testified as to the extent of the injury sustained. He uses the following language: "The people in the boarding house are friends of the plaintiff. It is my opinion that in testifying about the result of the accident they and the plaintiff did not tell the truth." The record is voluminous, being one of the largest records we have encountered in our experience, but a very careful study of it leaves in our minds the conviction that His Honor below was not in error in coming to the conclusion recited above.

Plaintiff, at the time of the accident, was on his way to a train depot to make, what appears to us, a rather unimportant trip to the country, intending to return that night. If his injuries had been as serious as he contends it is certain that he would not have continued on that trip, but we find that he not only went on the trip, but that, before going on the trip, he did not obtain even a first-aid treatment from a doctor, though he says that he did call at a hospital but could not wait until a doctor arrived; that he ate his meals apparently as usual during the day, and that included in that trip were several automobile rides covering many miles.

After his return home he claims to have been under the care of day and night nurses for several weeks and there is no doubt that he did call in a reputable physician, who treated him for two or three weeks, but that physician states that, outside of a little nervousness, he was never able to discover anything wrong with the plaintiff except a slight brushburn under one of his arms. An x-ray examination showed no bones broken and no internal injury.

It is true that prior to the accident plaintiff, who had been suffering from an eye disease known as trachoma, had become considerably better and that some time after the accident this disease became more active and required considerable treatment from an oculist and it is true that the oculist testified, as did the physician, that nervous excitement might start into activity such a disease. However, the oculist stated that it was more probable that the recurrence thereof resulted from the presence of dust or smoke or something of that kind. The oculist also testified that trachoma often recurs without apparent cause and as a result of his testimony we would not be justified in holding that the accident had any connection whatever with the subsequent recurrence of the disease.

The other statements in the record and other allegations in the petition are so patently exaggerated as to warrant the belief that plaintiff took advantage of a minor accident to attempt to mulct defendant for excessive damages. At any rate, the trial judge saw and heard all the witnesses and in cases where there is an apparent attempt to mislead and exaggerate we find, especially applicable, the rule that the findings of the trial judge should not be interfered with.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, defendant Mrs. Hardie to pay all costs in the court below and her own costs on appeal and plaintiff to pay all other costs.