J. T. SWINSON, MRS. ALTHEA SWINSON, MRS. RUTH SWINSON AND AARON J. SWINSON v. E. E. NANCE.

(Filed 14 June, 1941.)

**1. Appeal and Error § 39—**

This action involved a collision at an intersection. Defendant's witness was permitted to testify that she saw the car in which plaintiffs were riding approaching the intersection at a rapid rate of speed, but her testimony that at the time she exclaimed to her sister "Why don't they slow up" was stricken out. *Held:* Even conceding that the exclamation was competent as part of the *res gestæ*, its exclusion cannot be held prejudicial in view of the fact that the witness was permitted to testify as to the speed of the car.

**2. Same: Evidence § 18—.**

Plaintiffs questioned defendant's witness as to statements made by the witness on a former trial involving the same collision in suit. On redirect examination, the witness was not permitted to answer defendant's questions as to whether his testimony was the same as that given on the former trial, which questions the witness would have answered in the affirmative. Defendant then introduced the transcript of the testimony of the witness on the former trial for the purpose of corroboration. *Held:* Even conceding that defendant's questions as to the identity of the witness' testimony on both trials were sufficiently particularized to bring them within the rule, the introduction of the transcript of the witness' testimony was the best method of corroboration, and the exclusion of the testimony was not prejudicial.

**3. Evidence § 29—**

This was a civil action involving a collision at an intersection. Plaintiff had been convicted of reckless driving in a prosecution involving the same collision. *Held:* Objection to defendant's interrogation of plaintiff on cross-examination as to whether plaintiff had not been convicted of reckless driving in a prosecution growing out of the collision in suit was properly sustained even though asked for the purpose of impeaching plaintiff, since if the sole purpose was to impeach plaintiff by showing that he had been convicted of a criminal offense, the question was too particularized.

**4. Automobiles § 12c—**

The failure of a defendant traveling upon a servient highway to stop before entering an intersection with a through highway is not contributory negligence *per se*, but such failure is merely evidence to be consid-

ered by the jury in the light of the surrounding circumstances, C. S., 2621 (305), and this rule is unaffected by a municipal ordinance making such failure to stop unlawful, since the State law prevails over the ordinance.

**5. Same—Right of way of motorist traveling along through street over vehicles entering intersections from servient highways is not absolute.**

A motorist traveling along a through highway does not have an unqualified right of way over vehicles entering intersections from servient highways, such right of way being subject to the rule of the reasonably prudent man, and when he enters the intersection with a servient highway at an excessive speed, the fact that he had the right of way is no longer a conclusive factor in considering his behavior and he is not entitled to rely upon his right of way to absolve him from liability for injuries proximately caused by his negligent speed, and his exceptions to instructions consonant with this rule and his exceptions to the court's refusal to give specific instructions at variance therewith, cannot be held for error.

**6. Automobiles § 20b—**

Where a driver's wife, his brother and his sister-in-law are passengers in his car while taking his sister to the hospital for examination, the occupants of the car are not engaged in a joint enterprise so as to make them responsible for the negligence of the driver.

**7. Same: Appeal and Error § 39—**

Whether the alleged negligence of the driver of a car should be imputed to the passengers of the car becomes academic when the jury finds that the driver of the car was not guilty of negligence, and exceptions to the refusal of the court to give instructions upon the doctrine of imputed negligence cannot be sustained.

**8. Trial § 31: Negligence § 20—**

Where the jury is instructed that if they answer the issue of contributory negligence in the affirmative they should not proceed further, but should leave the issue of damages unanswered, a further instruction that an affirmative finding of contributory negligence would end the case and plaintiffs could not recover, cannot be held for error, since the jury, being composed of men of intelligence, could have inferred that an affirmative finding of contributory negligence would bar recovery notwithstanding the further instruction.

BARNHILL, J., dissenting.

STACY, C. J., and WINBORNE, J., concur in dissent.

APPEAL by defendant from *Nettles, J.,* at September Civil Term, 1940, of DAVIDSON. No error.

As the result of an automobile collision, separate suits were brought by the four plaintiffs against the defendant, all claiming personal injury and damage sustained through defendant's negligence, and the plaintiff, J. T. Swinson, claiming, in addition, damages for injury to his car. For purposes of trial the four suits were consolidated, without objection, and tried. Issues relating to negligence, contributory negligence and damages in each case, were submitted to the jury and answered in favor of all the plaintiffs, respectively, and defendant appealed.

Under appropriate pleadings evidence was introduced by plaintiffs and defendant which, as pertinent to this appeal, is substantially as follows:

J. T. Swinson testified that he was driving an automobile on Sprague Street in the city of Winston-Salem at the time of the collision, in which Aaron Swinson, Mrs. Althea Swinson and Mrs. Ruth Swinson were passengers. They were taking Mrs. A. J. Swinson to the Baptist Hospital for an examination. The witness and his wife were in the front seat and the brother and his wife in the rear seat, the brother on the right.

Sprague Street runs east and west and Main Street runs north and south. Sprague Street is about 40 feet wide and Main Street 38 feet wide. Approaching and intending to cross the intersection of Main Street, witness says he slowed down to about 10 miles an hour, looking both ways. He could see to the right about 200 feet, and saw no one approaching. According to his testimony, when he got about midway of the street he saw a car approaching. It collided with witness' car about the curb line—or what would be the curb line if extended—on the west side of the street, striking his car about the middle. The car turned over twice and landed on the opposite side of the street, about 40 feet away, headed in a direction opposite to that they were traveling.

Continuing his testimony, approaching Main Street there were obstructions consisting of shrubbery, a house on a bank which was about four feet from the road, and maple trees along the side. The view of the stop sign was obstructed. It was about 12 to 20 feet from the entrance into Main Street where witness could first see to his right. Witness saw a stop sign that afternoon "about halfway between the sidewalk and the road" in front of the house. The sign post is to the left of the road, the sign part six feet from the ground. It was yellow. Witness' view of Main Street was obscured by a hedge of evergreen trees, some as high as his head. Witness saw defendant when he was about 30 feet away, and believes he was making 70 miles an hour, says Nance applied brakes and was going about 30 miles an hour when the cars collided; says Nance told him he could not stop—that if he had turned to the left he would have turned over, and if he turned to the right he would have hit a post, so he had to hit the Swinson car "center." Other testimony relates to the injuries received in the collision.

On cross-examination, several exceptions were taken to the exclusion of evidence from this witness relating to his conviction on a criminal charge of reckless driving growing out of this transaction.

A. J. Swinson testified that his brother came to "a slow stop" before entering Main Street, or very nearly stopped, and looked to the right, then released his brakes. He testified the Nance car was coming at a rate of 60 or 70 miles an hour. He further testified as to his injuries.

On cross-examination, he testified that he wanted to take his wife to the hospital for examination and his brother volunteered to take them; testified the stop sign was not where it could be seen.

Mrs. A. J. Swinson testified that she looked to the right on going into Main Street and could not see anyone approaching. She gave evidence tending to corroborate other witnesses as to the circumstances of the collision.

Pertinent evidence for the defense contradicted that of plaintiff in important particulars.

The defendant, E. E. Nance, testified that side streets across Main Street all had stop signs except those that had stop lights. He was going, he testified, south down Main Street toward Lexington, and when he approached Sprague Street, just before he got to the street he saw a car coming down Sprague Street making 50 or 60 miles an hour. Witness expected him to stop, but he did not. He ran in front of witness' automobile and they collided. There was a stop sign on each side of the street, consisting of a disc 24 inches across, containing the word "Stop." Witness was traveling about 25 or 30 miles an hour and applied brakes when he saw the car was not going to stop. Witness thinks he was in the intersection first. The collision occurred when witness was about 8 or 9 feet within the intersection. The Swinson car had already passed the stop sign when witness saw it. Witness denied that he had told J. T. Swinson that witness was going too fast to stop.

On cross-examination, witness stated that he was going about 10 or 12 miles an hour at the time of the collision. Swinson's car was about 15 feet from the intersection when he saw it—between 30 and 40 feet away. Witness was not looking in that direction; didn't know which car got to the intersection first. Witness doesn't know why his car hit the Swinson car right in the side.

Defendant introduced ordinances of the city of Winston-Salem designating Main Street as a "through highway" and making it unlawful to enter such highway from an intersecting street without stopping, where there is a stop sign.

Dorothy Jones testified for the defense as to the visibility of the stop sign.

Mrs. Belle Heath testified that she saw the Swinson car approaching at a rapid rate of speed and exclaimed to her sister, "Gosh, why don't they slow up!" This evidence as to what she said to her sister was stricken out and defendant excepted. She estimated the speed of the car as from 40 to 45 miles per hour.

Mrs. E. M. Johnson testified that the Swinson car was going 40 to 45 miles an hour and did not check up speed at all. She also gave evidence as to the visibility of the stop sign.

J. L. Heath testified that just before the collision the Swinson car passed him at a rapid rate of speed, 45 or 50 miles per hour, and made no effort to stop. The Nance car was in the intersection first.

On cross-examination, this witness was questioned as to whether certain statements had been made on a former trial. On redirect examination, several questions were addressed to him as to whether the testimony on that trial was the same as at present. The evidence was excluded and exceptions were taken. Later the plaintiffs introduced the transcript of the evidence of this witness at the former trial in question.

Other evidence relates principally to the injuries sustained in the collision and damage to the Swinson car.

The plaintiff, J. T. Swinson, was recalled. The court excluded an inquiry whether the witness had not been convicted of reckless driving in connection with this collision, and defendant excepted.

The defendant moved for judgment of nonsuit at the conclusion of all the evidence, and the motion was overruled. Defendant excepted.

The defendant made numerous exceptions to the refusal of the court to give instructions requested and to the instructions as given, which will be noted in the opinion where thought material.

In apt time, defendant excepted to refusal to set aside the adverse verdict, and to the signing of the judgment, and appealed.

*D. A. Troutman, Phillips & Bower, and McCrary & DeLapp for plaintiffs, appellees.*
*Don A. Walser for defendant, appellant.*

SEAWELL, J. The defendant took 39 exceptions to the conduct of the trial, all of which have been brought forward. It will be impossible to give these exceptions individual attention in formulating our opinion, although, of course, they have not been overlooked in our study of the case. We necessarily confine our observations to the more challenging objections.

There are three exceptions to the exclusion of evidence offered by the defendant which merit attention.

In the testimony of Mrs. Belle Heath, who was an eye-witness to the collision, the following occurred: "Q. What, if anything, did you observe going West on Sprague Street? A. Well, I seen a car going at a rapid rate of speed and I have seen so many wrecks out there I exclaimed to my sister, 'Gosh, why don't they slow up!'"

Upon objection by the plaintiffs, a part of this answer was stricken out, the court holding that what the witness said to her sister was incompetent. The defendant contends that this was a spontaneous exclamation, part of the *res gestæ,* which ought to have been admitted. We

doubt if the admission of this evidence could be held for error under the decisions of this Court. *Young v. Stewart,* 191 N. C., 297, 131 S. E., 735, and cited cases. But this does not mean that its exclusion is necessarily error. Some discretion must be conceded to the trial court in the admission of evidence of this sort, 20 Am. Jur., p. 557, sec. 663, especially in marginal cases. We doubt whether the declaration here is so clear in its implication as to qualify under the rule. At any rate, the witness testified fully as to the speed of the Swinson car, and we do not think the defendant was materially prejudiced by its exclusion.

On cross-examination, J. L. Heath, witness for defendant, was questioned with regard to statements made by him on a former trial involving facts of the collision. On redirect examination, at the instance of the defendant, he was asked several questions, different in form but identical in purpose, of which the following is typical: "Q. State whether or not your answers in the Winston trial in the Court you spoke of were the same you gave here yesterday?" To all of these questions the witness, if permitted, would have answered "yes." The defendant excepted to the exclusion of this evidence. Later, the plaintiff introduced, without objection, the entire transcript of Heath's evidence at the former trial referred to in these questions.

Ordinarily, when for the purpose of impeachment the testimony of the witness is challenged as contradictory to a former statement, he would be permitted to testify that his former statements were the same as he now made. We doubt whether the questions addressed to the witness were of such particularity as to bring them within the rule, since they had a broadside reference to everything he might have said on the previous occasion. The point loses importance, however, in view of the fact that his testimony had been reduced to writing and the record thereof was before the jury for comparison, a more satisfactory method of corroboration or contradiction as the case might be. We cannot see that the defendant was prejudiced in this connection.

Growing out of the collision, J. T. Swinson, one of the plaintiffs, had been indicted and convicted in the Superior Court of Forsyth County for reckless driving. Near the close of the trial, when plaintiff had been returned to the stand for direct testimony, defendant's counsel, on cross-examination, sought to bring into the evidence the fact that he was so convicted. In the absence of the jury, the following question was addressed to the witness: "Q. I ask you if in the case of State against yourself where, in this testimony that has been referred to by your counsel and this cross-examination of Mr. Heath, you were not convicted by the Court up there of reckless driving?" The witness would have admitted that he had been so convicted. Counsel for the defendant stated that he asked the question solely for the purpose of impeaching

the witness. The court observed: "This is not in the presence of the jury. It appears to the court that the case to which the question refers is a criminal indictment based on the wreck or collision involved in this lawsuit; therefore, objection is sustained." To this defendant excepted. The jury returned to the courtroom and, in view of the intimation of the court, the question was not asked. Passing the fact that the question was not renewed when the jury returned, we think its exclusion was proper anyway. If the sole purpose was to impeach the witness by showing that he had been convicted of a criminal offense, the question might have been formulated differently. The question tied the testimony to the transaction then under civil investigation and the effect, if the evidence should be admitted, was to bring before the jury on the question of contributory negligence the fact that the plaintiff had been convicted of careless driving by another jury because of the same act of negligence. The situation is novel as far as we can discover, but we are convinced that the exclusion of the evidence was proper, on this principle *ut res magis valeat quam pereat.*

Other exceptions in this group, we do not consider meritorious.

The defendant in his assignments of error has grouped a number of exceptions to the refusal to give special instructions to the jury, presented in his request. They fill nearly five mimeographed pages of the record and cover practically all of the important features of the case on which the judge might be expected to charge the jury. Most of these instructions, in so far as they were consistent with the law, were given to the jury independently by the judge according to his own method of formulating his charge. As presented by the defendant, they were refused.

To understand the effect of such refusal, as well as the objections to various parts of the charge as given, we must refer to the type of accident disclosed by the evidence or, rather, the situation which the evidence presents as existing at that time.

(1) The Swinson car was approaching a main thoroughfare along an intersecting road marked with stop signs, the main thoroughfare being regarded as dominant and the road along which the Swinson car was approaching servient. The defendant was proceeding towards the intersection of the dominant highway. Plaintiffs and defendant were thus approaching the intersection simultaneously. (2) The evidence is conflicting with regard to the behavior of J. T. Swinson, the driver on the servient road, and of Nance, the defendant. But there is evidence tending to show that both Swinson and Nance were approaching at a high and unlawful rate of speed, as well as evidence to the contrary in both instances. (An ordinance of the town of Winston-Salem purports to make it unlawful and a criminal offense for one approaching a main

thoroughfare at an intersection marked with a stop sign not to stop before entering thereon. The State law, C. S., 2621 [305], provides, under these circumstances: "That no failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence.") (3) The defendant was the driver and sole occupant of his car. The plaintiffs were four in number, the plaintiff J. T. Swinson driving up to the time of the collision. The question of joint enterprise is raised, with insistence on common responsibility of all the occupants of the car for the negligence of the driver as a legal consequence.

Without analyzing the prayers for special instructions separately, an impossible and unnecessary task as we view it, we may say that, collectively, they are largely based upon what we regard as erroneous conceptions of the law, and assumptions of the truth of undetermined facts, within the province of the jury. The result is that the categories they present do not lead to the conclusions of law which it is desired the Court should adopt. The two more prominent misconceptions of the law presented by the requested instructions may be considered in order. The first relates to the insistence of the defendant that the failure of the plaintiff to obey the stop sign was negligence *per se.* This view is incorrect, since an ordinance of the town cannot displace the applicable State law, which makes such a failure merely evidence to go to the jury to be considered in the light of the surrounding circumstances. C. S., 2621 (305); *Stephens v. Johnson,* 215 N. C., 133, 1 S. E. (2d), 367; *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539.

The other is the view that the defendant, traveling the dominant highway, had an unqualified privilege in the right of way, regardless of his own conduct in approaching and negotiating the intersection.

Right of way is not absolute. Valuable as the principle may be in determining questions of negligence, particularly between participants in a collision, nothing could be more disastrous than to regard it, either in law or in fact, as displacing the predominant duty of due care resting on those who use the streets and highways. The law applicable to this state of facts is stated in *Groome v. Davis,* 215 N. C., 510, 516, as follows: "The holder of the right of way, even on an arterial highway, does not possess an unqualified privilege in its exercise. The duty still rests on him to use due care in approaching an intersection, notwithstanding he may know that it is protected by a stop sign on the less favored highway; and without the exercise of such care his right of way will not avail him. His right to rely on the assumption that a driver approaching the intersection on the servient road will observe the stop sign is forfeited

when he approaches the intersection and attempts to traverse it at an unlawful or excessive speed. And even when he is within the law, it may be necessary for him to surrender his right of way, in the exercise of due care, to avoid the consequences of another's negligence. The principles, thus summarized, are clearly stated in leading texts: Huddy on Automobiles, 9th Ed. 3-4, pp. 228, 263, 264, 277; Berry on Automobiles, 3.2; Babbitt on Motor Vehicles, 4th Ed., 439, 461; and they find expression in numerous well considered opinions of the courts, from which we cite the following as containing a more detailed exposition of the rules under consideration than we find convenient to make here: *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539; *Anthony v. Knight,* 211 N. C., 637, 191 S. E., 323; *McCulley v. Anderson* (Neb.), 227 N. W., 321; *Richard v. Neault,* 126 Maine, 17, 135 Atl., 524, 525; *Brown v. Saunders,* 44 Ga. App., 114, 160 S. E., 542; *Rosenau v. Peterson,* 147 Minn., 95, 179 N. W., 647; *Carter v. Vadeboncoeur,* 32 Manitoba L. R., 102, 11 B. R. C., 1113; *Carlson v. Meusenberger,* 200 Iowa, 65, 204 N. W., 432; *Ray v. Brannon,* 196 Ala., 113, 72 So., 16."

It was the duty of the defendant, notwithstanding his right of way, to observe due care in approaching and traversing the intersection and to take such action as an ordinarily prudent person would take in avoiding the collision when the danger was discovered, or by the exercise of reasonable care could have been discovered in time.

Ordinarily it is said that a defense of this kind is available only to one who is himself free from negligence, or, to put it more accurately, of negligence such as might stand in proximate relation to the injury. It is also said that a person may forfeit his right of way by his own negligence. Here, too, it might be better to put it that his right of way is no longer a conclusive factor in considering his behavior. "Simply stated, the right to make the assumption is available only to one who himself is free from negligence. Some States, by express wording of the statute, have rendered such a defense unavailable to negligent drivers; *Morris v. Bloomgren,* 127 Ohio State, 147, 187 N. E., 2, 89 A. L. R., 831; *Wolfe v. Fay Bros. Auto and Taxicab Co.,* 18 La. App., 321, 138 So., 453; *Jordan v. Western Motor Ways,* 213 Cal., 606, 2 P. (2nd), 786; and in others the courts have reached the same result by judicial reasoning." *Groome v. Davis, supra,* p. 516. From the same case, where the facts were similar in outline, we quote: "From the time defendant came into the zone of obligation, and the duty of care with regard to this intersection arose, his acts must be considered as a continuing sequence. The negligence of the defendant, if the jury should find such negligence, might have begun some distance up the road when he surrendered control for speed, finding later he could not retrieve it." See p. 518. The evidence tends to show negligence on the part of defendant in approaching

the crossing at a high rate of speed, and perhaps in other respects, and the court had no right to give instructions which assumed the contrary.

Other requested instructions are based on the theory that all of the plaintiffs were engaged in a joint enterprise for their mutual benefit, and, therefore, responsible for the negligence of the driver. The facts do not bring the case within the bounds of that doctrine. *Montgomery v. Blades,* 218 N. C., 680; *Haney v. Lincolnton,* 207 N. C., 282, 176 S. E., 573; *Smith v. Barnhardt,* 202 N. C., 106, 161 S. E., 715; *Bulner v. Whitlow,* 201 N. C., 749, 161 S. E., 389; *S. v. Norfolk, etc., R. Co.* (Md.), 135 A., 827. Furthermore, since the jury absolved J. T. Swinson, the driver, of negligence, the question is now academic.

Exceptions to the instructions given, for the most part, may be correlated with the contrary view of the law, and significance of the evidence, represented in the prayer for special instructions, since they bear largely on the features of the evidence and of the law, just considered. We think they constitute a proper application of the law to the facts, and do not find in them cause for reversal.

There remains to be considered an objection to the charge which defendant stresses as gravely prejudicing his case. After retiring and considering the case for some time, the jury returned to the courtroom, where further instruction was given them. The part to which defendant objects was as follows: "If you answer the second issue 'Yes,' then that ends the lawsuit and, of course, the plaintiff could not recover, gentlemen of the jury, if they were guilty of contributory negligence."

The law requires that persons of intelligence be selected as jurors. As such, when repeatedly told to proceed no further if they answered the issue of contributory negligence "yes," leaving the issue of damages unanswered, they must have inferred that the plaintiff would, in that event, get nothing. The exception is without merit.

Separate and detailed comment on the numerous exceptions noted in the trial would serve no useful purpose. We have dealt with the main features of the case out of which the important exceptions arise. Others have been carefully considered.

We find

No error.

BARNHILL, J., dissenting: The conflicting and contradictory evidence in this case requires the application of more than one rule of the road as prescribed by our statutes.

1. If the facts are as the defendant's testimony tends to show and the two cars approached the intersection at approximately the same time, the defendant, under the law, possessed the right of way, and it was the duty of Swinson to stop and permit the passage of defendant's car before he

entered the intersection. This is true without regard to the speed of defendant's car. Secs. 117-118, ch. 407, Public Laws 1937.

2. If, however, the Swinson car was in the intersection at the time the defendant approached, as the evidence of the plaintiffs tend to show, Swinson had the right of way although he failed to stop before entering the intersection, sec. 117 (b), ch. 407, Public Laws 1937, and it was the duty of defendant, in approaching the intersection occupied by plaintiff's car, to immediately decrease his speed, bring his car under control and, if necessary, to stop in order to yield the right of way to the plaintiff and to avoid a collision. Sec. 103 (4-c), ch. 407, Public Laws 1937, and

3. If at the time Swinson approached and entered the intersection defendant's automobile was a sufficient distance away, when operated at a reasonable and lawful rate of speed, to permit Swinson to cross in safety, Swinson, notwithstanding his prior violation of the law in entering the intersection without stopping, had the right to assume that the defendant would exercise due caution and approach at a reasonable rate of speed and yield the right of way.

On this phase of the case the court charged the jury as follows: (1) "His (defendant's) right to rely on the assumption that a driver approaching the intersection on the servient road will observe the stop sign is forfeited when he approaches the intersection and attempts to traverse it at an unlawful or excessive rate of speed." (2) "The right of a driver on the more favored road—and, in this case, Gentlemen of the Jury, the more favored road would be Main Street—to assume that another car approaching on the servient road—and the servient road would be Sprague Street—will observe a stop sign, or laws, respecting the right of way, is conditioned on the behavior of the defendant, and the assumption can be made only when it will not be inconsistent with the paramount duty to exercise due care, incumbent on the person who would assert the right. Simply stated, Gentlemen of the Jury, the right to make the assumption, that is, to assume that the man will stop before entering—that is, the assumption that the defendant may make that the plaintiff, J. T. Swinson would stop his automobile before he went into Main Street is available to the defendant only in the event that E. E. Nance on this occasion was free from negligence. Simply stated, the Court charges you the right to make the assumption is available only to one who himself is free from negligence." (3) "Now, in reference to that, the Court again charges you, Gentlemen of the Jury, that the defendant had the right to assume that J. T. Swinson would stop his automobile, provided that the defendant, E. E. Nance, was operating his automobile within the law, that is, free from negligence."

At the same time it declined to charge the converse as prayed by the defendant as follows: (1) "The court charges the jury that in determin-

ing whether reasonable care was exercised by the defendant it must be remembered that the defendant having the right of way on Main Street may take into consideration the duty of other drivers to obey the law and the probability that they will do so." (2) "The driver of an automobile on a main or 'through' highway has a right to rely on stop signs at said intersecting highway and is not guilty of negligence in assuming that a vehicle on the intersecting street will regard the stop sign before entering the primary highway, and cannot be charged with negligence in acting upon such assumption." (3) "As a matter of law, if the defendant Nance, at the time of said collision, or at the time he approached said intersection, was operating his car at a speed in excess of 25 miles per hour, said unlawful speed would not lose the right of way given to him pursuant to section 2621 (302), Consolidated Statutes of North Carolina. And (4) "The Swinson car being to the left of the defendant Nance's car at said intersection, if the defendant Nance's car did approach or enter said intersection at approximately the same time with the Swinson car, that it would be the duty of the driver of the Swinson car to yield the right of way to the Nance car, notwithstanding the fact that the Nance car at said time was being operated in excess of 25 miles per hour."

Is the right to assume that others will observe the law available only to one who is free from negligence?

Does a motorist who is exceeding the speed limit thereby forfeit his right to assume that other motorists will observe stop signs and other traffic regulations at intersections?

Is his assumption that other motorists will observe stop signs before entering a primary highway evidence of negligence?

Does a motorist, by driving at a speed in excess of 25 miles per hour forfeit his right of way at an intersecting highway?

Is it improper for a jury, in judging the conduct of a motorist, to consider the fact that he who has the right of way may take into consideration the duty of others to observe the law and the probability that they will do so?

The court, in giving the charge quoted and in declining to instruct as requested, answered each of these questions in the affirmative. In my opinion these conclusions are erroneous and constitute harmful error.

A motorist is not under the duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety. 45 C. J., 705; *Murray v. R. R.,* 218 N. C., 392, and cases cited; *Coach Co. v. Lee,* 218 N. C., 320.

A traveler upon a public highway has a right to assume, within reasonable limits, that others using it will exercise reasonable care and will obey traffic regulations, and the failure to anticipate the omission of such care does not render him negligent, until the contrary is brought to his attention. 4 Blashfield, Auto L. & P., 478; *Mast v. Claxton,* 107 Cal. App., 59, 209 Pac., 48; *McCulley v. Anderson,* 227 N. W., 321 (Neb.); *Richard v. Neault,* 135 Atl., 524; 3-4 Huddy on Automobiles (9d), pp. 228-63; 3-4 Huddy (9d), pp. 276-77; Babbitt on Motor Vehicles (4d), 439.

A motorist having the right of way "approaches a crossing expecting and entitled to expect that one approaching from the left will recognize his right, and his conduct is to be judged of in view of that circumstance." *Carlson v. Meusenberger,* 204 N. W., 432. He is not required to anticipate negligence on the part of other highway travelers at crossings or intersections, but in the absence of any circumstance giving notice to the contrary, he has the right to assume and act on the assumption, that they will exercise ordinary care, not only for their own safety but for the safety of others, whether such duty or care is imposed by common law or statute or ordinance. 3-4 Huddy (9d), pp. 228, 263. "The fact that one is entitled to the right of way in the intersection is a very material element in determining whether he has exercised the required degree of vigilance." 3-4 Huddy (9d), pp. 276, 277.

Greater care to avoid a collision is imposed on the driver not having the right of way than upon the other. Thus, if the driver of a vehicle upon an intersecting highway reaches a main or arterial thoroughfare, it is his duty to look to the right and to the left; and if another vehicle is approaching the intersection on the main thoroughfare it is his duty, before entering the intersection, to wait until the approaching vehicle has passed, unless a prudent person would have reasonable grounds to believe that the approaching vehicle, proceeding at a lawful speed, is so far distant from the intersection that he could safely cross in advance. 3-4 Huddy (9d), 262.

"Ordinarily, the driver having the right of way at an intersection need not stop before proceeding to the intersection. He is not bound to anticipate that the other driver will fail to slow down. In fact, he may assume that the other driver will slow down or stop" and "the driver not having the right of way . . . has a special duty to stop." Babbitt on Motor Vehicles (4d), 439. See also *Rosenau v. Peterson,* 179 N. W., 647 (Minn.).

Our automobile law at one time contained the provision that a motorist having the right of way forfeited it by traveling at an unlawful rate of speed. Sec. 18-a, ch. 148, Public Laws 1927. This provision has been repealed and the only limitations upon the right are those set forth in

sec. 118, ch. 407, Public Laws 1937. The statute under consideration in *Morris v. Bloomgren,* 187 N. E., 2, 89 A. L. R., 831, cited in the majority opinion, contained a limitation on the right similar to that in the 1927 law. Hence that decision is not in point.

The rule is designed to avoid those dangers that are inherent when two automobiles simultaneously approach an intersection by designating the one that should yield the right of way to the other and to prevent careless drivers from crashing highway intersections.

It is not invoked and has no application until and unless the two automobiles approach the intersection at approximately the same time, so that, unless one yield, a collision is likely to occur. *Piner v. Richter,* 202 N. C., 573. "It very clearly means that when a vehicle on each of these streets approaches their intersection, visible to each other, at such a time and under such a speed as would render their collision imminent, if one should not give way to the other, then the vehicle going north or south must, at its peril, be so conducted, circumstances permitting, as to allow the vehicle going east or west to pass in front." *Ray v. Brannon,* 72 So., 16 (Ala.), (in that case the motorist going east or west had the right of way).

To avail a defendant he is not required to show that he was free from negligence. As the rule applies only when two cars approach intersections at approximately the same time additional speed merely means that he will clear the intersection more quickly and leave it clear for the use of the other motorist.

It does not exist when there is another automobile already in the intersection when a motorist on the dominant road approaches. Nor does it apply when the motorist on the servient road approaches and attempts to cross the intersection at a time when a motorist on the dominant road is a sufficient distance away, when and if he is operating at a reasonable rate of speed, to permit the motorist on the servient road to cross in safety. *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539. In such case the motorist on the servient road has the right of way and may assume that the oncoming car on the dominant road will decrease its speed and permit him to pass in safety.

This right of way rule, which the plaintiff can claim if he was already in the intersection at the time defendant approached, and which the defendant can claim if the two cars approached the intersection at approximately the same time, is quite different from and is independent of the rule which requires a motorist, when approaching a crossing or intersection, to decrease his speed to such extent as may be necessary, under the circumstances, to avoid colliding with any person, vehicle or other conveyance on or entering upon the highway, in compliance with legal requirements and the duty of all persons to use due care. Sec. 103 (4-c), ch. 407, Public Laws 1937.

When a motorist does not have the right of way as he approaches the intersection, it is his duty, upon seeing another car approaching on an intersecting street and possessing the right of way, either under statutory provision, sec. 117, ch. 407, Public Laws 1937, or by reason of the fact that the other car is already in the intersection, to immediately decrease his speed, put his car under complete control and, if necessary, stop in order to yield the right of way to motorists entitled thereto. When, however, he possesses the right of way, he has the right to assume that the approaching motorist will observe the law, and his duty to take positive action to make it possible for him to stop his car before reaching the immediate zone of danger arises when it becomes apparent that the other party will, or is about to, disregard the law and enter the zone of danger in violation of the statute. Sec. 103 (4-c), ch. 407, Public Laws 1937.

This right is conferred by statute. It is subject only to the limitations provided by statute.

*Non constat* the right is not forfeited by a mere failure to strictly observe statutory regulations as to speed, a motorist may be required under some circumstances, in the exercise of proper care, to forego the right and yield it to another. The right does not relieve a motorist of the duty to exercise due care. When he has had time to realize, or by the exercise of proper care and watchfulness, should realize, that the other motorist is unaware of his presence, or does not intend to observe the law, or is in a somewhat helpless condition, or is apparently unable to avoid the approaching machine, he must exercise increased exertion to avoid a collision, and, if necessary, must forego his right of way. *Guthrie v. Gocking,* 214 N. C., 513, 199 S. E., 707, 2 R. C. L., 1185; *Cory v. Cory,* 205 N. C., 205, 170 S. E., 629; *James v. Coach Co.,* 207 N. C., 742.

Hence, while the right of way is not absolute and is not sufficient, in and of itself, to absolve from blame, its presence or absence is a very material circumstance to be considered by the jury in deciding whether one's conduct was that of a reasonably prudent man, or was or was not the proximate cause of the collision. *Carlson c. Meusenberger, supra.*

To say that the right of way is forfeited is to say that it no longer exists and must not be taken into consideration in judging the conduct of the parties. This is not in accord with the decisions.

The rules of the road are reciprocal. If the rule applied by the court below works one way, it operates both ways. Swinson admittedly drove into an intersection of a through street, against a stop sign, when his view was partially obstructed, without stopping. He looked to his right just as he entered the intersection. He then drove 30 feet without again looking to the right, from which direction the defendant was approach-

ing.  At the time, according to his testimony, there was no car sufficiently near the crossing to endanger him, provided such car was being operated at a reasonable rate of speed.  Sans the right on his part to assume that any approaching car would observe the law and yield the right of way to him after he entered the intersection, his conduct constituted gross negligence and the cause, as to him, should have been nonsuited.

But this is not the law.  If, as he states, he was in the intersection when defendant's car approached, he had the right to assume, *non constat* his unlawful conduct, that the approaching car would slow down, and, if necessary, stop in order to permit him to pass in safety.

The purpose of the automobile law is to provide for every contingency or condition which creates or is likely to create danger to life or property.  To adopt the view expressed in the charge of the court below, as approved in the majority opinion, would have the opposite effect.  It would create a vacuum in the law which would produce confusion and uncertainty.

Defendant, if he approached the intersection at approximately the same time as did the plaintiff, driving in excess of the speed limit, forfeited the right of way accorded him by the statute.  It did not pass to the plaintiff by inheritance.  Even if it did, plaintiff in turn forfeited it by his conduct in driving into an intersection against a stop sign, without stopping.  Thus, we have a situation where neither possessed the right of way and it was not the duty of either to slow up or stop to allow the other to pass in safety.  Certainly the duty rests on either the one or the other to yield—except in cases such as this.  I cannot believe that sound reason dictates the exception.

A careful examination of the authorities cited in the majority opinion discloses that they sustain the right of a motorist to assume that others will obey the law.  Most of them I have cited.  While they hold that the right of way is relative—not absolute—no one of them contains any suggestion that a motorist can claim his right of way only when and if he is free of negligence.  They do hold that the jury should consider as a material circumstance the presence of the right of way in determining whether the motorist on the dominant highway exercised reasonable care under all the circumstances.

It is only fair to the court below to say that it acted upon expressions contained in *Groome v. Davis,* 215 N. C., 510, 2 S. E., 771, which, on the facts in that case, are merely obiter.  There the unlawful conduct of the plaintiff in driving across a stop sign onto the line of traffic of a vehicle on the main arterial road was negatived by proof that the defendant's automobile was a sufficient distance away to permit him to pass in safety, provided the oncoming car was operated at a reasonable rate of speed.  That case was properly decided under the law as stated in the

*Sebastian case, supra.* It was on that theory that I concurred in the opinion filed. Nonetheless the court applied these statements as the law of this case. Their correctness now becomes material.

In my opinion a new trial should be awarded.

STACY, C. J., and WINBORNE, J., concur in dissent.