At about 10:30 o'clock on the night of January 10th, 1940, Mr. and Mrs. August Weitkam were riding in an automobile driven by their major daughter, when, after it had been brought to a sudden stop by her, it was struck from the rear by another car driven by Alton Johnston. Mrs. Weitkam sustained personal injuries and she claims from Johnston $1,000. Mr. Weitkam seeks recovery in the sum of $348.95 for the damage sustained by his automobile, and in the sum of $25 for medical expenses made necessary by his wife's injuries. Johnston, by reconventional demand, prayed for judgment against August Weitkam for $143 for the damage sustained by the Johnston car.
There was judgment below in favor of Mr. Weitkam for $348.95 and for Mrs. Weitkam for $200. In the judgment no mention was made of the reconventional demand, the effect being that it must be considered as dismissed. Johnston has appealed.
Petitioners allege that their car, driven by their daughter, was proceeding out So. Carrollton Avenue, and that as it reached a point nearly in front of their residence, which was No. 1817 So. Carrollton Avenue, Miss Weitkam, who intended to turn into the driveway, was compelled to bring it to a stop near the neutral ground because there was other moving traffic going in the same direction, which was passing to her right. Petitioners allege also that while their car was standing still in its position near the neutral ground, it was struck suddenly by the Johnston car, which was proceeding in the direction into which their car had been proceeding, and they charge Johnston with negligence in the following particulars:
(a) In not keeping his car under proper control;
(b) In not keeping a proper lookout ahead for vehicles in front of him;
(c) In striking an automobile, stopped and in a stationary position in front of him; and
(d) In speeding in violation of Commission Council Ordinance No. 13,702 at a rate of speed approximately 50 miles per hour.
Johnston denies all responsibility for the accident, stating that he was not aware of the presence of the Weitkam car until another automobile ahead of him, and behind the Weitkam car, suddenly swerved to the right to avoid the Weitkam car, and thus exposed that car so that for the first time he saw it when it was immediately in front of him and so near that he could not avoid it, though he made every effort to do so. He states also that he could not turn to his right and avoid the Weitkam car ahead as the intervening car had done. He averred that he, himself, was without fault and that the accident was due entirely to the fault of Miss Weitkam, "who was acting at the time as the agent of plaintiffs and that because of her negligence * * * plaintiffs are barred of recovery."
He charged Miss Weitkam with negligence in the following particulars:
(a) In stopping her automobile against the neutral ground in the line of rapidly moving traffic;
(b) In failing to give any warning to the traffic approaching that she was about to stop;
(c) In driving next to the neutral ground instead of near the sidewalk curbing when she intended to turn into the driveway at 1817 So. Carrollton Avenue; and Johnston charges that in all of the above acts, Miss Weitkam was in violation of the City Traffic Ordinance No. 13,702.
The record shows that Mr. and Mrs. Weitkam, with their daughter who was driving the car, were returning from a visit, the purpose of which the record does not disclose. They were proceeding along the lower driveway of So. Carrollton Avenue away from the Mississippi River. Mr. Weitkam was on the front seat with his daughter and Mrs. Weitkam was in the rear. As the car reached a point about opposite their home, and while it was still very close to the neutral ground on the left, Miss Weitkam stopped it as it was her purpose to turn to her right and to enter the driveway of the Weitkam home, and because there were other automobiles behind *Page 584 
and alongside her, which prevented her turning without first stopping to let them pass.
Immediately behind the Weitkam car was another vehicle driven by T.C. Knabel, who was accompanied by Robert Morrill. Knabel found it possible to avoid running into the Weitkam car, which he avoided by swerving suddenly to his right. Back of the Knabel car was the car of defendant, Johnston, and this car crashed into the rear of the Weitkam car causing the injury and damage for which plaintiffs seek recovery.
Knabel testified that just before the accident he had been "driving behind the Weitkam car * * * about 30 or 40 feet * * *" when "for no apparent reason the car stopped suddenly a little away from the neutral ground." He said also that he "happened to be looking at the car" and was therefore able to avoid striking it but added, "* * * I did not know it was going to stop * * * I had no signal that it was going to stop." Morrill also said that the car stopped very suddenly. Miss Weitkam stated on the other hand that when her car was struck it had been standing still for "five minutes."
Mrs. Weitkam testified that her daughter signalled that she intended to turn to the right and had slowed up to make the turn, and that two other cars and then the Knabel car passed to the right before the Johnston car struck them in the rear.
Mr. Weitkam stated that other cars prevented his daughter from making the turn without first letting them go by and that when he warned his daughter, she stopped; that three cars passed and that then he "looked back in the glass to see if there were any more coming" and saw another one — the Johnston car — coming "on the opposite side of Hickory" and he continued that "he (Johnston) kept coming right on ahead, and ran into us." It seems clear that the Weitkam car had not been stopped for more than a few moments when it was struck by the Johnston car, and that it had been stopped without signal by Miss Weitkam.
In stopping her car on the wrong side of the street, Miss Weitkam was guilty of negligence and she was, in fact, technically at fault in being on that side in view of the fact that in anticipation of making a turn into her driveway, she had been driving slowly. Section 4 of Article V of the City Traffic Ordinance No. 13,702 CGS provides that:
"Slowly moving * * * vehicles shall * * * keep as near the righthand curb as possible."
It was negligence also to fail to give notice by hand signal of her intention to stop or to reduce the speed of her car, for in Section 1, paragraph "a" of Article VI of that ordinance, it is required that
"In slowing up, or stopping or turning, a visible signal shall always be given to vehicles in the rear."
But most of all she was at fault in attempting, under the circumstances, to turn from one side of the road into a driveway on the other. This is a dangerous maneuver and the driver attempting it must make certain that it is safe to do so. She should have been on the right hand side in the first place, but as she had been following the usual custom of "hugging" the neutral ground to her left, it was her duty, with great care, to have piloted her car to the other side some distance before reaching her driveway. It is vehemently insisted that she was within her rights in stopping where she did since she could not cross at that time to the other side, and since to have proceeded further would have made it necessary that she pass her home and then return to it by some other route. But that was the only safe thing to do, and its necessity resulted from her own failure to cross over to the correct side before it was too late for her to do so with safety.
Counsel for plaintiff, in contending that Miss Weitkam was not at fault, rest their argument on the well established rule that a following driver should operate his car at such speed as will permit of its being stopped however suddenly or unexpectedly the car ahead may be brought to a stop. This rule is expressly set forth in the cited traffic ordinance, paragraph "a" of Section 14 of Article V of which provides that
"The operator of a motor vehicle shall not follow another vehicle or street car more closely than is reasonable and prudent, having due regard to the speed of such vehicle or street car and the traffic upon and the condition of the roadway."
That rule is expressly recognized in many cases, notably Greer v. Ware, La.App., 187 So. 842; Fuld v. Maryland Casualty Co., La.App., 178 So. 201; Session v. Kinchen, La.App., 178 So. 635; Roberson v. Rodriguez, La.App., 186 So. 853; Ardoin v. Robinson, La.App., 176 So. 228.
We quote the following from the Greer case [187 So. 844]: *Page 585 
"According to the law and jurisprudence of this state, when two automobiles are being driven along a public road in the same direction, on a country road, the driver of the front car holds no duty to the car in the rear, except to use the road in the usual way in keeping with the laws of the road, and until he has been made aware of the presence of such rear car by signal or otherwise, he has a right to assume that there is no other vehicle in close proximity in his rear or, if there is one there, it is under such control as not to interfere with his free use of the road in any lawful manner. And in the absence of facts or circumstances that would put the driver of an automobile on notice of the near approach of another machine from the rear, he may drive slow or fast, select the parts of the road best suited to travel, stop or start at will. And where two automobiles are being driven along a highway in the same direction, the forward car has the superior right. This was held in the case of Stevens v. Dean, 6 La.App. 537."
This rule is particularly applicable where automobiles are on country roads, though the reasons on which it is based make it applicable also, to some extent, on city streets, but it does not, in any sense, relieve the driver of the leading car of the obligation to drive carefully and to avoid sudden and unexpected stops which may create dangerous emergencies. In other words, even though Johnston may have been at fault in crashing into the Weitkam car, which had been suddenly and unexpectedly stopped, his negligence in that regard would not, in itself, have caused the accident had Miss Weitkam operated her car in conformity with the provisions of the traffic ordinance and with the dictates of prudence.
We now consider whether Johnston was also negligent in not stopping his car before it struck the Weitkam car. A case somewhat similar to the present one is that of Testard v. Board of Commissioners, etc., 8 La.App. 238. There plaintiff, driving his automobile, observed a friend waiting for a streetcar, and suddenly stopped near the neutral ground "to pick up" his friend. A following car turned sharply to the right and avoided plaintiff's car, but the driver of a third car was unable to turn and struck the stationary car of plaintiff. We held that the plaintiff, in suddenly stopping, had created a hazard which the driver of the third car had no reason to anticipate, and we dismissed plaintiff's suit.
Here, however, we find circumstances which we think justify a different conclusion. The speed at which all the cars, except possibly that operated by Johnston, had been moving was not great and each could have been stopped within a few feet. Johnston, at the time Miss Weitkam brought her car to a stop, was some distance behind the intervening car, and even when that car had been forced to swerve out of line, he, Johnston, was a distance sufficiently behind the Weitkam car to have permitted of his stopping or swerving had he been on the alert. He, himself, said that just before approaching Hickory Street "he was 40 or 50 feet, something like that, behind the Knabel car."
Miss Weitkam stated that after she had stopped her car, three other cars passed and "Mr. Johnston's car was the fourth car behind me." Her mother corroborated this, stating that Johnston's car was "the fourth car" and that it "was back of Hickory Street."
The Weitkam residence was the third from the corner of Hickory Street so that the Weitkam car, when it stopped, must have been some 50 or 60 feet from that corner.
Mr. Weitkam also corroborated his daughter's testimony that the Johnston car was the fourth, saying:
"Three cars passed, and I looked back in the glass to see if there were any more coming. On the opposite side of Hickory there was another car coming."
He than added that this other car was the Johnston car and that it, at that time, was "about 150 feet * * * away from the back of my car", and he also added that at that time there was no other car between the rear of his and the front of Johnston's. We are convinced from the record that Johnston was not keeping his attention focused on the operation of his car, and on what was ahead of him, and that even the negligence of Miss Weitkam, which undoubtedly created the dangerous emergency, would not have caused the accident, had Johnston, himself, not been careless.
Thus, both drivers were at fault, and the fault of each contributed in bringing about the result.
Miss Weitkam, at the time, was operating her father's car and was his *Page 586 
agent, and therefore, because of her negligence, he is precluded from recovery since her negligence is to be imputed to him. See Gannon v. New Orleans Ry. Light Co., 154 La. 435, 97 So. 601.
In Wolfe v. Toye Bros. Auto Taxicab Co., Inc., 18 La.App. 321, 138 So. 453, 454, we said:
"There is no doubt that a parent merely by reason of the relationship is not responsible for negligent acts of his or her major children; but here we find from the evidence that the automobile in question belonged to Mrs. Hardie; that she was riding therein; and that, according to her statement, it is probable that she had asked her son to drive her to the railroad station to meet her parents. It is quite true that on various prior occasions the son, on his own initiative had driven to the station to meet defendant's parents, his grandparents, and it is equally true that, had an accident occurred on those occasions, in all probability there would have been no liability in Mrs. Hardie; but here it appears that the son, though a major, acting on the request of his mother, was driving her in her car, and we feel that thus on this particular occasion he was acting as the agent of his mother, and that she should be responsible for the results of his negligent deeds while so acting."
So far as Mrs. Weitkam is concerned, however, the legal situation is different. She was riding on the rear seat at the time. The negligence of Mr. Weitkam and of his agent, Miss Weitkam, is not to be imputed to her since the negligence of the husband is not imputed to the wife in an action by the wife for personal injuries received by her. See Vitale v. Checker Cab Co., Inc., 166 La. 527, 117 So. 579, 59 A.L.R. 148. Nor does the doctrine of joint adventure preclude Mrs. Weitkam from recovery. That doctrine has no application here since Mrs. Weitkam did not have equal right to direct or control the operation of the automobile. See Squyres v. Baldwin, 191 La. 249, 185 So. 14. The fact that Miss Weitkam was operating the car as the agent of her father and that her father was the head and master of the community existing between himself and his wife, would not prevent Mrs. Weitkam from recovering because the damages for which she sues do not form part of the community of which the husband is head and master, for Art. 2402 of the La. Civil Code reads in part as follows:
"* * * Damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone * * *."
Mrs. Weitkam, according to her physician, complained of "pains in the head and neck." He said that "she had brush wounds below the knee". X-ray photographs of the skull and spine "showed no evidence of fracture or injuries that could be shown by X-ray." It is true that there did appear "* * * a hypotrophic arthritis of the spine, which in plain English means a form of rheumatism of the vertebral column characteristic of new bone formation."
But the doctor frankly stated that that condition "antedates the time of the accident". The records of the clinic to which Mrs. Weitkam was taken show that she visited it three times between January 11th and August 15th, 1940. She said:
"I suffered from pains in my head and knee, and it was difficult for me, I was unable to lie down. * * * That lasted about three weeks and then I was able to get up and about the house; I wasn't confined to bed, but still suffered."
We do not think that the evidence justifies any change in the amount awarded to Mrs. Weitkam.
It is therefore ordered, adjudged and decreed that the judgment appealed from, in so far as it runs in favor of Mrs. Weitkam and against Alton Johnston, be and it is affirmed at the cost of appellant.
It is further ordered, adjudged and decreed that in so far as it runs in favor of Mr. August Weitkam, it be, and it is reversed, and that the suit of Mr. Weitkam be dismissed at his cost. In all other respects the judgment is affirmed.
Affirmed in part. Reversed in part. *Page 587